

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00223-CV

MARTHA SULLIVAN                                                    APPELLANT
AND DENNIS SULLIVAN

V.

THE CITY OF                                                        APPELLEE
FORT WORTH, TEXAS

------------

FROM THE 348TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION ON REHEARING[1]

------------

We have considered Appellee's motion for rehearing. We deny the motion but withdraw our February 3, 2011 opinion and judgment and substitute the following.

---

[1]*See* Tex. R. App. P. 47.4.

Appellants Martha and Dennis Sullivan (the Sullivans) appeal the trial court's order granting the City of Fort Worth's (the City) plea to the jurisdiction. The City claimed governmental immunity from the Sullivans' claims.

**Background**

One evening in 2007, the Sullivans attended their granddaughter's wedding, which was held in the Japanese Garden (the Garden), part of the city-owned Fort Worth Botanic Gardens. While leaving the wedding, Mrs. Sullivan fell on one of the designated footpaths, breaking her ankle. The Sullivans claim that the winding path, which included stone and wood steps, was inadequately lit and that they had to make their way in the dark. Mrs. Sullivan could not see the edges of the steps and misjudged the distance between the steps, causing her fall. The Sullivans alleged in their petition, among other things, that the City failed to properly construct, install, inspect, maintain, repair, and light the pathways; to provide handrails or adequate lighting; and to warn the wedding guests of the nature and condition of the stairs. The Sullivans claimed that the City's governmental immunity was waived under the Texas Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001–.109 (Vernon 2011).

The City filed a plea to the jurisdiction, arguing that the trial court lacked subject-matter jurisdiction as a matter of law because the claims were barred by governmental immunity. *See id.* § 101.056. As admitted in their brief on appeal, the City's argument in their plea to the jurisdiction was not that the Sullivans failed to allege a premises liability cause of action but that it was not an

2

actionable claim because the Sullivans' allegations of negligence were for discretionary decisions for which there is no waiver. The City alternatively argued that if it was not immune, the Recreational Use Statute applies because the Sullivans were engaging in recreation at the time of the accident. *See* Tex. Civ. Prac. & Rem. Code Ann. § 75.002 (Vernon 2011). Under the Recreational Use Statute, the City would only owe the Sullivans the duty it would owe to a trespasser, *id.*, and the City argued that the Sullivans could not show that it violated that duty.

After a hearing, the court granted the City's plea to the jurisdiction. The Sullivans requested findings of facts and conclusions of law, but the court refused, claiming the hearing was not evidentiary and thus, findings of facts and conclusions of law were not appropriate. In two issues, the Sullivans argue that the trial court erred in granting the City's plea to the jurisdiction because the Sullivans have properly alleged a premises liability cause of action under the Texas Tort Claims Act and because the Recreational Use Statute does not apply. For the reasons set forth below, we affirm the trial court's judgment in part and reverse and remand in part.

## Standard of Review

Whether the trial court has subject-matter jurisdiction is a question of law that we review de novo. *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002). A plea to the jurisdiction is a dilatory plea that challenges the trial court's subject-matter jurisdiction. *Bland Indep. Sch. Dist. v.*

3

*Blue*, 34 S.W.3d 547, 554 (Tex. 2000). It is used to defeat a cause of action without regard to whether the claims asserted have merit. *Id.*

The plaintiff has the burden of alleging facts that affirmatively establish the trial court's subject-matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). We construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept the pleadings' factual allegations as true. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). If, as in this case, a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties that is necessary to resolve the jurisdictional issues. *Id.* at 227; *Bland*, 34 S.W.3d at 555.

The plea to the jurisdiction standard generally mirrors that of a traditional motion for summary judgment. *Miranda*, 133 S.W.3d at 228; *see* Tex. R. Civ. P. 166a(c). The governmental unit is required to meet the summary judgment standard of proof for its assertion that the trial court lacks jurisdiction. *Miranda*, 133 S.W.3d at 228. Once the governmental unit meets its burden, the plaintiff is then required to show there is a disputed material fact regarding the jurisdictional issue. *Id.* We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Wise Reg'l Health Sys. v. Brittain*, 268 S.W.3d 799, 805 (Tex. App.—Fort Worth 2008, no pet.) (citing *Miranda*, 133 S.W.3d at 228). If the evidence creates a fact question regarding jurisdiction, the trial court must deny the plea to

4

the jurisdiction and leave its resolution to the factfinder. *Miranda*, 133 S.W.3d at 227–28. But if the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

## Discussion

### I.    Premises Liability Claims Under the Tort Claims Act

The City claims governmental immunity from the Sullivans' suit. Unless waived by the State, governmental immunity defeats a trial court's subject-matter jurisdiction. *Id.* at 225. The Texas Tort Claims Act waives governmental immunity for certain torts, including personal injury "caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021, .025. The Act also contains a discretionary powers exception, which preserves immunity for a claim based on

(1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or

(2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.

*Id*. § 101.056. The discretionary powers exception avoids "judicial review or interference with those policy decisions committed to the other branches of

5

government." *Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 657 (Tex. 2007).

Courts employ two different tests for determining what constitutes a discretionary decision. *Id*. One test distinguishes between policy and operational-level decisions, such as the distinction between the policy of when and under what circumstances to release water from a spillway and the operational decision of the volume of outflow. *See State v. Terrell*, 588 S.W.2d 784, 788 (Tex. 1979). The other test distinguishes between design and maintenance, such as the distinction between designing a bridge without lighting and failing to maintain lighting that was installed. *See Tarrant Cnty. Water Control v. Crossland*, 781 S.W.2d 427, 433 (Tex. App.—Fort Worth 1989, writ denied). In employing these tests, we must liberally construe the Tort Claims Act, *Robinson v. Cent. Tex. MHMR Ctr*., 780 S.W.2d 169, 170 (Tex. 1989), while also recognizing that the waiver of immunity is "limited, not unlimited," *Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998).

The Sullivans' claims can be divided into four categories: Claims regarding the City's maintenance of the Garden; claims regarding the adequacy of lighting; claims regarding the safety measures implemented; and claims that the City failed to warn them about the condition of the stairs.

The Sullivans first claim that the City failed to maintain the trees and other greenery around the lights to prevent the trees from blocking the lights.

6

Specifically, they pleaded, "Nearby trees blocked any natural or generated light that might have been available, and foliage from the trees blocked existing lights in the trees." The affidavit of Erdie Allsup, the Executive Director of the Fort Worth Botanical Society, which was attached to the City's plea to the jurisdiction, supported the Sullivans' factual allegation that lights were placed in the trees "along the pathways to provide light . . . so that guests of a lessee would be able to follow a pathway back to their cars." Further, Allsup agreed in her deposition that if the lighting in the area where the fall took place was not adequate, that would create a dangerous condition for persons descending the stairwell at night. In his deposition, Henry Painter, the Director of the Fort Worth Botanic Gardens, stated that it was possible for foliage from the trees to block the light and that foliage would have to be maintained in order for some of the lights to shine down to the path. Foliage trimming is a maintenance decision for which courts have repeatedly held that governmental immunity is waived under the Tort Claims Act. *See, e.g., City of Irving v. Seppy*, 301 S.W.3d 435, 442 (Tex. App.—Dallas 2009, no pet.) (holding that the city was not immune from appellants' claims regarding the maintenance of the catwalk from which decedent fell); *City of Dallas v. Heard*, 252 S.W.3d 98, 108 (Tex. App.—Dallas 2008, pet. denied) (holding that pleading that the city failed to maintain security cameras was sufficient to allege a premises defect claim). The City claims the maintenance decisions are "discretionary" because they require approval. But the test is not whether decisions require approval. Most acts performed by subordinate government

7

employees require some sort of approval from a superior. The test divides protected policy decisions from the implementation and maintenance of that policy. The policy decision to keep the park maintained, as opposed to letting it grow wildly, is a protected discretionary decision. The subsequent acts to implement that policy of trimming trees are not protected. *See Flynn*, 228 S.W.3d at 658 (holding that decisions concerning timing and direction of water spray were not protected).

The Sullivans have claimed that the City did not provide adequate lighting by failing to install enough lights and failing to properly place the lights. The City is immune from liability for its decision whether to install lights in the Garden to make it usable at night. *See Crossland*, 781 S.W.2d at 433. Further, the City is immune for the original design of the Garden, which includes where light sources will be located and the number of those locations. However, contrary to the City's repeated assertions, the Sullivans' pleading also contains allegations of negligence for failing to provide adequate lighting by alleging non-design or maintenance issues. Specifically, the Sullivans allege that the City "failed to properly . . . inspect, maintain, repair and light the stairs." In its motion for rehearing, the City isolates an individual allegation to support its position that the Sullivans were merely asserting a claim based on the design decision not to light the foot of the stairs. This completely ignores the remaining detailed allegations of maintenance issues. Once the City decided to make the Garden available to visitors in the evening, it is not immune from liability for the subsequent decisions

8

involved in implementing that policy, such as the wattage of the light bulbs or failure to inspect and replace burned-out bulbs to avoid inadequate lighting. The City chose not to present evidence at the hearing on the plea to the jurisdiction that the original design encompassed decisions such as wattage or replacement of the light bulbs.[2] These are operational decisions for which immunity is waived. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.056; *Flynn*, 228 S.W.3d at 658 ("[T]he decisions here concerning when and where the water was to spray were operational- or maintenance-level decisions, rather than policy formulation.").

The Sullivans have also made claims that the City failed to install safety measures other than lighting to make the pathways safely traversable at night, such as handrails along the entire path. These claims address the design of the Garden and the City retains its immunity from such claims. *See Crossland*, 781 S.W.2d at 433. The Sullivans allege a failure to provide safety measures by failing to provide temporary and portable lighting. These claims are clearly challenges to the City's policy decisions or its failure to act when no particular action is required by law and these claims are not actionable. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.056; *see also State v. Miguel*, 2 S.W.3d 249, 251 (Tex. 1999) (holding that the decision as to what safety or warning system to use is discretionary). As to the Sullivans' claims that the City failed to warn them of

---

[2]In reviewing a plea to the jurisdiction, we accept the pleadings' factual allegations as true and resolve any doubts in the nonmovant's favor. *Miranda*, 133 S.W.3d at 226, 228. It was thus the City's burden to provide evidence supporting its assertion that the trial court lacks jurisdiction. *Id*. at 228.

9

the condition or nature of the stairs, the Sullivans do not claim that the steps were damaged or in a state of disrepair. These claims are merely a recasting of their other claims against the design of the Garden, and the City is immune from liability for the design of the Garden. *See Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30, 32 (Tex. 1983) (holding that complaints about "some condition" of property require allegations of defective or inadequate property).

In sum, the City is not immune from those claims which attack its operational decisions; to wit, the claims against the maintenance of the lighting and the foliage in the Garden. We continue our analysis of those claims below to determine the duty owed and whether the Sullivans pleaded facts to support a cause of action based on that duty. As to the claims which attack the design of the Garden, we sustain the trial court's ruling that it has no jurisdiction over them.

## II.    The Recreational Use Statute

The City argues that, for the claims for which it is not immune, the Recreational Use Statute applies. *See* Tex. Civ. Prac. & Rem. Code Ann. § 75.002(c) (Vernon 2011). The Recreational Use Statute states

(c) If an owner, lessee, or occupant of real property other than agricultural land gives permission to another to enter the premises for recreation, the owner, lessee, or occupant, by giving the permission, does not:

(1) assure that the premises are safe for that purpose;

(2) owe to the person to whom permission is granted a greater degree of care than is owed to a trespasser on the premises; or

10

(3) assume responsibility or incur liability for any injury to any individual or property caused by any act of the person to whom permission is granted.

*Id*. This limitation on liability does not apply where the owner, lessee, or occupant has been "grossly negligent or has acted with malicious intent or in bad faith." *Id*. § 75.002(d). "Recreation" is defined as

an activity such as:
(A) hunting;
(B) fishing;
(C) swimming;
(D) boating;
(E) camping;
(F) picnicking;
(G) hiking;
(H) pleasure driving, including off-road motorcycling and off-road automobile driving and the use of all-terrain vehicles;
(I) nature study, including bird-watching;
(J) cave exploration;
(K) waterskiing and other water sports;
(L) any other activity associated with enjoying nature or the outdoors;
(M) bicycling and mountain biking;
(N) disc golf;
(O) on-leash and off-leash walking of dogs; or
(P) radio control flying and related activities.

*Id*. § 75.001(3).

The City makes three arguments as to why the Recreational Use Statute applies. First, the Japanese Garden is a city park and thus its purpose is for recreation. Second, the wedding reception involved a meal and thus constitutes "picnicking." Third, an outdoor wedding, such as the one that the Sullivans attended, is an "activity associated with enjoying nature or the outdoors."

Statutory construction is a legal question we review de novo. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). In construing statutes, we ascertain and give effect to the legislature's intent as expressed by the language of the statute. *Id.* We construe a statute according to the plain meaning of its words unless a contrary intention is apparent from the context, or unless such a construction leads to an absurd result. *Id.* at 625–26.

As to the City's first argument, the Texas Supreme Court has held that it is not the landowner's or the injured party's intent for the land that matters but what the injured party was doing at the time she was injured that controls. *City of Bellmead v. Torres*, 89 S.W.3d 611, 614 (Tex. 2002). Thus, the fact that the Japanese Garden is a park is not determinative of whether the Recreational Use Statute applies.

As to the second argument, we believe it stretches the definition of picnicking to include a seated wedding reception dinner. The City claims, without support, that all meals taken outdoors are "by definition" a picnic. The definition in *Webster's Dictionary*, however, describes a picnic as "a social entertainment at which each person contributes food to a common table; . . . an excursion or outing with food usu[ally] provided by members of the group and eaten in the open." Webster's Third New International Dictionary 1711 (2002). The Japanese Garden has its own restaurant which is the exclusive caterer for events at the Garden, including the Sullivans' granddaughter's reception, and picnicking is not allowed in the Garden. The City has not argued that dining at a restaurant

12

is recreation as defined by the statute. While we do not believe the definition of picnic necessarily hinges on who brings the food, we do think that a wedding reception dinner is more akin to al fresco dining at the Garden's restaurant than to a picnic as traditionally understood. In any event, the Sullivans were not at the Garden to eat, they were there for a wedding. The reception meal was one part of the evening, and Mrs. Sullivan was not injured while she was dining. The fact that food was served and consumed as one stage of a sequence of events at a wedding does not mutate the entire event into a picnic.

Finally, we must address whether a wedding itself is "recreation." The City does not argue that all weddings are recreation, just outdoor weddings because they incorporate a natural "ambiance." *Webster's Dictionary* defines recreation as synonymous with diversion or play. Webster's at 1899. If we had to categorize all of human activity as either work or play, then perhaps we would define a wedding as recreation. But we do not think the statutory definition of recreation is so broad as to encompass all activity beyond work as recreation as long as it is conducted outdoors. *See* Act of May 30, 1981, 67th R.S., ch. 349, 1981 Tex. Gen. Laws 934 (showing that the original version of HB 749 included "visiting historical, archaeological, scenic, or scientific sites" in definition of the recreation but the language was removed). No other activity listed in the statute would so depend on its location. *See* Tex. Civ. Prac. & Rem. Code Ann. § 75.001. As Justice Hankinson stated in her dissent in *Torres*, the list of activities which are considered recreation does not indicate a legislative intent to

"expand the scope of the statute to all activities that occur outdoors."[3]  89 S.W.3d at 618.

The doctrine of *ejusdem generis* and the similar doctrine of *noscitur a sociis* apply to restrict the potentially broad meaning of "any other activity associated with enjoying nature or the outdoors."  We employ these rules to construe specific terms no more broadly than the legislature intended.  *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 29 (Tex. 2003).  Under *ejusdem generis*, when general words follow specific examples, we treat the general words as limited and apply them only to the same kind or class as those expressly mentioned.  *Id*.  *Noscitur a sociis* means that the meaning of particular words in a statute may be ascertained by reference to other words associated with them in the same statute.  *Id.*; *see also Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 575, 115 S. Ct. 1061, 1069–70 (1995) (statutory language "must be understood against the background of what Congress was attempting to accomplish").

The statute intends to immunize land owners from suit where the injured party was engaging in activity which bears some risk of danger.  *See* House Study Group, Bill Analysis, Tex. H.B. 749, 67th Leg., R.S. (1981) (stating that "[t]he original purpose of [the Recreational Use Statute] was to keep private land

---

[3]While we note that Justice Hankinson's comments appear in a dissenting opinion, the supreme court has not taken a contradictory position.  *See Torres,* 89 S.W.3d at 615 (holding, "in light of the general wording of the Texas statute and the purpose of the statute," that swinging on a swing is recreation).

14

open for hunting, fishing, and camping" and that many other activities added to the statute "require wide open spaces or lakes and streams"). A wedding is not the type of activity in which people engage assuming a risk of injury from physical activity. Thus, we do not think that the wedding transforms from a ceremony to recreation simply because it occurred outside. We believe there has to be something more—an activeness, a physical exertion, or immersion in the physical elements of nature—that is essential to finding an activity "associated with enjoying nature or the outdoors" as the statute intends. *Cf. Torres*, 89 S.W.3d at 615 (holding that swinging on a swing set is a type of activity associated with enjoying the outdoors); *City of Lubbock v. Rule*, 68 S.W.3d 853, 858 (Tex. App.—Amarillo 2002) (holding that "journeying to a park to enjoy its facilities and playground equipment is akin to 'picnicking' (albeit without the food) and within the category of an 'activity associated with enjoying nature or the outdoors'"), *overruled on other grounds by State v. Shumake*, 199 S.W.3d 279 (Tex. 2006).

To be a guest at a wedding is not an activity so similar to the sports and hobbies listed in the Recreational Use Statute that we think the legislature intended its inclusion. *See Gustafson*, 513 U.S. at 575, 115 S. Ct. at 1069–70 (defining "communication" to mean only public communications); *Tex. Dep't of Transp. v. York*, 284 S.W.3d 844, 847–48 (Tex. 2009) (refusing to define "special defects" to include loose gravel because it did not share characteristics with the listed examples in the statute); *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 751

15

(Tex. 2006) (holding that "water damage" in an insurance policy must mean "something more substantial than every tiny water leak or seep" such as "the kinds of uncommon and catastrophic losses for which homeowners obtain insurance, not for the common maintenance items for which they do not"). We therefore hold that the Sullivans were not engaging in recreation at the time of the accident. Thus, the Recreational Use Statute does not apply.[4]

### III. Duty Owed Under § 101.022

Under the Tort Claims Act, the City owes the Sullivans a duty "that a private person owes to a licensee on private property, unless the claimant pays for use of the premises." Tex. Civ. Prac. & Rem. Code Ann. § 101.022(a). If the Sullivans paid for the use of the premises, they are invitees. *See Seppy*, 301 S.W.3d at 441; *Garcia v. State*, 817 S.W.2d 741, 742 (Tex. App.—San Antonio 1991, writ denied). This distinction is relevant to the elements of the Sullivans' cause of action. *State v. Williams*, 940 S.W.2d 583, 584–85 (Tex. 1996). If the Sullivans were licensees, they must show that the City had actual knowledge of the unreasonable risk of harm created by the stairs. *See State Dep't of Highways v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992). If the Sullivans are

---

[4]Because the Recreational Use Statute does not apply, we need not address the City's argument that Mrs. Sullivan's injuries were caused "by her own act." *See* Tex. Civ. Prac. & Rem. Code Ann. § 75.002(c)(3). Nor do we address the Sullivans' issue concerning the required duty owed by the City to trespassers.

invitees, they only need to show that the City knew or should have known of the risk. *Id.*

The City argues that the Sullivans are licensees and that they have not pleaded facts demonstrating that the City had actual knowledge of the dangerous condition of the steps. The Sullivans claim they are invitees because their grandson-in-law, Jeremy Tekell, paid a rental fee for the Garden. The City argues that the rental fee was not an "admission payment" for the guests because Mr. Tekell paid a flat fee. That is, Mr. Tekell would have paid the same rental fee regardless of the number of guests.

The statute does not require a per capita admission price. The statute's only requirement is that the claimant "pays for use of the premises." Tex. Civ. Prac. & Rem. Code Ann. § 101.022(a). Mr. Tekell's rental fee included the admission of "up to 250 guests." It appears from the form agreement that another price would have been charged if more than 250 guests attended. Further, the wedding was held after normal park hours, and the park remained open only because Mr. Tekell had reserved it. The peace officer hired to provide security at the wedding testified that part of his duty was "making sure that no uninvited guests come in" and that he could arrest any "wedding crashers." Visitors were only admitted to the Garden after they identified themselves as wedding guests. *See Dallas-Fort Worth Int'l Airport Pub. Facility Improvement Corp. v. Banks*, No. 2-09-176-CV, 2010 WL 87865, at *4 (Tex. App.—Fort Worth Jan. 7, 2010, pet. denied) (mem. op.) (noting that evidence that appellant would

17

not have been granted entry into airport terminal where she fell created a genuine issue of material fact concerning her status as an invitee).[5] Had Mr. Tekell not paid the rental fee to lease the Garden, the Garden would have been closed to everyone, including the Sullivans. It was Mr. Tekell's rental fee which allowed the Sullivans' use of the premises that night. If the bride and groom had less than 250 guests, then the cost per guest would increase but it would not lessen the fact that a fee was charged and paid for their entry.[6]

The City cites three cases in support of its argument that the rental fee was merely *related* to the use of the premises, not *for* the use of the premises. *See Clay v. City of Fort Worth*, 90 S.W.3d 414 (Tex. App.—Austin 2002, no pet.); *City of Dallas v. Ortiz*, No. 05-99-00436-CV, 2000 WL 688208 (Tex. App.—Dallas May 18, 2000, pet. denied) (not designated for publication); *Graf v. Harris Cnty.*, 877 S.W.2d 82 (Tex. App.—Houston [1st Dist.] 1994, writ denied). In both *Ortiz*

---

[5]In *Banks*, as the City points out, there was a fact issue as to whether the plaintiff was an invitee. 2010 WL 87865, at *4. The issue existed because the plaintiff paid for use of the airplane, not directly for entry to the terminal where she fell. *Id*. Here, the Sullivans specifically paid (or were paid for) for the use of the premises on which Mrs. Sullivan fell, and thus no similar fact issue exists.

[6]We do not think it dispositive that it was Mr. Tekell and not the Sullivans themselves who paid the rental fee. The fee was paid for their entry, and without that fee, no guests could enter. Mr. Tekell paid for the entry of up to 250 guests, and the Sullivans were two of those guests. In any event, the City waived any argument as to the definition of "claimant" under the statute by failing to make the argument until its motion for rehearing. *See Coastal Liquids Transp., L.P. v. Harris Cnty. Appraisal Dist.*, 46 S.W.3d 880, 885 (Tex. 2001). In fact, the City claimed any such argument was a "non-sequitur" and refused to address it on appeal.

18

and *Graf*, the plaintiff never claimed to have paid for entry to the premises. *Ortiz*, 2000 WL 688208, at *3; *Graf*, 877 S.W.2d at 85. In *Clay*, the court dismissed the plaintiff's argument that because her employer, Southwestern Bell, was in a revenue-sharing relationship with the city, Southwestern Bell had paid for the use of city property where it had installed telephones. 90 S.W.3d at 417. In doing so, the court stated that "[o]nly a fee charged for entry onto a particular premise is sufficient to confer invitee status under section 101.022(a)." *Id*. Unlike the cases cited by the City, this fee was tied to entry on to a particular premise (here, the Garden) for specific people (up to 250 wedding guests) at a specific time (from 4:00 pm to 10:00 pm on April 20, 2007). No one else would have been granted entry at that time. As a matter of law, the Sullivans paid for use of the premises and thus are owed the duty the City would owe to an invitee. *See Miranda*, 133 S.W.3d at 226 (noting that undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction as a matter of law).

The City has consistently argued that invitee status does not apply to the Sullivans without attacking their cause of action if invitee status did apply. We hold, however, that it does. As invitees, the Sullivans only needed to plead facts sufficient to allege that the City knew or should have known of the risk of danger from the low lighting conditions. *See Payne*, 838 S.W.2d at 237. Because the City has not argued that the Sullivans have not pleaded sufficient facts to support their allegation that the City should have known of the dangerous condition, it

19

waived any complaint as to that issue, and we deny its plea to the jurisdiction on these claims as a matter of law.[7]  *See Miranda*, 133 S.W.3d at 227.

## Conclusion

We affirm the trial court's order granting the plea to the jurisdiction as to the previously specified claims that challenge the design of the Garden. Because the Sullivans claim that the City should have known of the dangerous condition of the stairs is uncontested, we hold that the trial court erred in part in granting the City's plea to the jurisdiction.  As to those claims regarding operational decisions, we reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.

LEE GABRIEL
JUSTICE

PANEL:  WALKER, MEIER, and GABRIEL, JJ.

DELIVERED:  May 19, 2011

---

[7]The City even admitted in its brief on appeal that "[the Sullivans'] evidence would support a premises liability claim for a dangerous condition."

20