**CITY OF BELLMEAD, Petitioner,**

v.

**Nanette TORRES and Mike Torres, Jr., Respondents.**

No. 01–0299.

Supreme Court of Texas.

Argued on March 6, 2002.

Decided Oct. 31, 2002.

Ned Bennett Sandlin, for Texas Municipal League.

Enid Allyn Patterson Wade, for City of Bellmead.

Charles L. Levy, for Nanette and Mike Torres, Jr.

Justice ENOCH delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice HECHT, Justice OWEN, Justice O'NEILL, Justice JEFFERSON, Justice RODRIGUEZ, and Justice SCHNEIDER joined.

Texas' Recreational Use Statute[1] absolves property owners of liability for injuries to others using the property for recreation so long as the property owner does not engage in grossly negligent conduct or act with malicious intent or in bad faith.[2] In this case, while taking a break after playing in a softball tournament at the Bellmead Softball Complex, Nanette Torres was injured when the swing she was sitting on broke. She sued the City of Bellmead, the owner of the complex, for premises defect. The City defended under the Recreational Use Statute, asserting that because Torres did not allege that the City's actions were willful, wanton, or grossly negligent, it was entitled to summary judgment. The trial court agreed. But the court of appeals concluded that softball, the reason Torres was at the complex in the first place, was not a recreational activity.[3] It therefore reversed the summary judgment and remanded the case for trial.[4] Because the court of appeals erred, we reverse and render judgment for the City.

I

The City filed a motion for summary judgment, admitting that Torres alleged "a condition or use of tangible personal or

---

1. TEX. CIV. PRAC. & REM.CODE §§ 75.001–.004.

2. Id. § 75.002(d).

3. 40 S.W.3d 662.

4. Id. at 666.

real property" sufficient to waive sovereign immunity under the Texas Tort Claims Act,[5] but asserting that the claims were controlled by the Texas Recreational Use Statute (the "Statute").[6] The Statute provides:

> If an owner, lessee, or occupant of real property other than agricultural land gives permission to another to enter the premises for recreation, the owner, lessee, or occupant, by giving the permission, does not:
>
> (1) assure that the premises are safe for that purpose;
>
> (2) owe to the person to whom permission is granted a greater degree of care than *is owed to a trespasser on the premises*; or
>
> (3) assume responsibility or incur liability for any injury to any individual or property caused by any act of the person to whom permission is granted.[7]

In addition, the Statute defines premises to include structures.[8] As well, as it existed in 1996, when Torres was injured, the Statute itemized a number of activities as recreation such as: hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, cave exploration, and waterskiing and other water sports.[9] Since 1996, the Legislature has amended the Statute twice to include a larger number of activities as examples of recreation. The first was in 1997, when the Legislature included "any other activity associated with enjoying nature or the outdoors."[10] The second was in 1999, when the Legislature added subsection (e) to section 75.002 to include indoor hockey or skating at a municipally owned or operated facility.[11] The controlling question is whether the Recreational Use Statute applies. If it does, the duty owed is only that owed to a "trespasser on the premises"[12]—to refrain from causing injury willfully, wantonly, or through gross negligence.[13]

## II

■ The court of appeals began by focusing on Torres' purpose for being at the Bellmead Softball Complex.[14] It then considered whether softball was the type of activity that the Legislature intended to include in the Recreational Use Statute. Concluding that softball was a competitive team sport, the court concluded that softball was not the type of recreation envisioned by the Legislature.[15]

The City contends that the court of appeals erred by focusing on the subjective

---

**5.** Tex. Civ. Prac. & Rem.Code § 101.021(2).

**6.** *Id.* §§ 75.001–.004.

**7.** *Id.* § 75.002(c)(1)-(3) (emphasis added).

**8.** *Id.* § 75.001(2).

**9.** Act of May 15, 1989, 71st Leg., R.S., ch. 736, § 1, 1989 Tex. Gen. Laws 3299 (amended 1995 and 1997) (current version at Tex. Civ. Prac. & Rem.Code § 75.001(3)(A)-(L)).

**10.** Act of April 24, 1997, 75th Leg., R.S., ch. 56, § 1, 1997 Tex. Gen. Laws 124 (current version at Tex. Civ. Prac. & Rem.Code § 75.001(3)(L)).

**11.** Act of June 18, 1999, 76th Leg., R.S. ch. 734, § 1, 1999 Tex. Gen. Laws 3345 (current version at Tex. Civ. Prac. & Rem.Code § 75.002(e)).

**12.** *Id.* § 75.002(c)(2).

**13.** *See, e.g., Tex. Utils. Elec. Co. v. Timmons,* 947 S.W.2d 191, 193 (Tex.1997); *Burton Constr. & Shipbuilding Co. v. Broussard,* 154 Tex. 50, 273 S.W.2d 598, 603 (Tex.1954); *see also* Restatement (Second) of Torts § 333 (1965).

**14.** 40 S.W.3d at 664.

**15.** *Id.* at 665–66.

intent of the injured individual. Instead, according to the City, the landowner's intent should control the inquiry into what is recreation. The City finds support for this conclusion in the section that grants protection to landowners who give "permission to another to enter the premises for recreation ..." [16] The City describes the relevant inquiry as: What did the landowner give permission for the entrant to do, once the entrant came on to the landowner's property? If the permission was for a recreational activity, then the Recreational Use Statute applies.

But this articulation only goes so far. If the Legislature intended that the intent of the owner, lessee, or occupant control, there would have been no need for it to list recreational activities. [17] There are many activities for which a landowner could easily give permission that one might consider recreation. But the Legislature provided a list of recreational activities, and because neither sitting on a swing nor playing softball are listed in the Statute's examples, we must decide which activity should be the focus and whether the Legislature intended to include that activity as recreation.

■ We again note that this is a premises defect case. The court of appeals erred in reasoning that the relevant inquiry was whether softball is recreation as defined by the Statute [18] because Torres did not allege that there was any defect in the softball field, bases, fences, or dugout. She alleged that there was a defect in the swing. All negligence causes of action require a causal relation between the injury

and the injury-causing event. [19] In a premises defect case, the dangerous condition must be a cause of the resulting injury. [20] The court of appeals' conclusion that Torres's intent to play softball is controlling detaches this necessary causal link. Under the court of appeals' analysis, the City could be held liable for injuries caused by a defective swing set because it concluded that softball is not recreation. This simply does not follow. Stated another way, even though there is a premises defect, if it in no way contributes to an injury, it cannot be the basis for a cause of action for the premises defect.

The Recreational Use Statute does not change the fact that this is a premises defect claim. The Statute makes Torres's activity relevant in determining whether she was engaged in recreation under the Statute. But the injuries she alleged must be related to the premises defect. Even if softball is not recreation within the meaning of the Statute, a question we need not resolve, Torres's intent upon entering the Softball Complex is not controlling. It is what she was doing when she was injured that controls. And she was sitting on a swing, and the swing broke.

## III

■ Torres's petition alleges that the swing was defective, and that the swing caused her injuries. Therefore, the question is whether sitting on a swing is recreation as contemplated by the Statute. In our view, sitting on a swing is the type of activity that the Legislature intended to

---

16. TEX. CIV. PRAC. & REM.CODE § 75.002(c).

17. *See id.* §§ 75.001(3), 75.002(e).

18. 40 S.W.3d at 666.

19. *See El Chico Corp. v. Poole,* 732 S.W.2d 306, 313 (Tex.1987).

20. *See, e.g., Wal–Mart Stores, Inc. v. Gonzalez,* 968 S.W.2d 934, 936 (Tex.1998); *City of Grapevine v. Roberts,* 946 S.W.2d 841, 842 (Tex.1997); *Keetch v. Kroger Co.,* 845 S.W.2d 262, 264 (Tex.1992); *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 295 (Tex.1983).

include as recreation when they enacted the Statute.

Before the Statute was amended in 1997, one court of appeals directly held that swinging on a swing was recreation.[21] The court of appeals reasoned that the Statute did not provide an exclusive list.[22] "In light of the general wording of the Texas statute and the purpose of the statute, swinging is a recreational activity contemplated under [the Statute]."[23] And while we overruled that court's judgment, we did so because we concluded the Statute did not apply to municipalities.[24] Significantly, the Legislature thereafter specifically amended the Statute to not only apply it to municipalities,[25] but also to include broader language than relied on by the court of appeals to conclude that swinging was recreation.[26] The Legislature included within the definition of recreation "any other activity associated with enjoying nature or the outdoors."[27] Since then, other courts of appeals have considered playing on playground equipment recreation.[28]

While the Recreational Use Statute does not specifically list swinging as an example of recreation, it is certainly within the type of activity "associated with enjoying ... the outdoors."[29] Furthermore, the statute specifically contemplates recreation related to structures on the property.[30] As well, other jurisdictions have held, under similar recreational use statutes, that playing on playground equipment is recreation.[31] As one Texas court of appeals reasoned, "[t]hat journeying to a park to enjoy its facilities and playground equipment is akin to 'picnicking' (albeit without the food) and within the category of an 'activity associated with enjoying nature or the outdoors' cannot reasonably be disputed."[32] We conclude that sitting on a swing is recreation under the Recreational Use Statute.

Because sitting on a swing is recreation as contemplated by the Recreational Use Statute, the City owed Torres only the duty not to injure her through willful, wanton, or grossly negligent conduct. And because Torres did not plead any willful, wanton, or grossly negligent conduct, she cannot recover from the City as a matter of law. We reverse the court of appeals judgment and render judgment for the City.

Justice HANKINSON filed a dissenting opinion.

Justice HANKINSON dissenting.

Under the Court's interpretation today of our recreational use statute, TEX. CIV.

---

**21.** *See Martinez v. Harris County*, 808 S.W.2d 257, 259 (Tex.App.-Houston [1st Dist.] 1991, writ denied), *overruled on other grounds by City of Dallas v. Mitchell*, 870 S.W.2d 21 (Tex.1994), *superceded by statute*, TEX. CIV. PRAC. & REM.CODE § 75.003(g).

**22.** *Martinez*, 808 S.W.2d at 259.

**23.** *Id.*

**24.** *Mitchell*, 870 S.W.2d at 23.

**25.** TEX. CIV. PRAC. & REM.CODE § 75.003(g).

**26.** *Id.* § 75.001(3)(L); *see also Martinez*, 808 S.W.2d at 259.

**27.** TEX. CIV. PRAC. & REM.CODE § 75.001(3)(L).

**28.** *See City of Lubbock v. Rule*, 68 S.W.3d 853, 858 (Tex.App.-Amarillo 2002, no pet.); *Flye v. City of Waco*, 50 S.W.3d 645, 647 (Tex.App.-Waco 2001, no pet.).

**29.** TEX. CIV. PRAC. & REM.CODE § 75.001(3)(L).

**30.** *See id.* § 75.001(2).

**31.** *See Watson v. City of Omaha*, 209 Neb. 835, 312 N.W.2d 256 (1981) (slide); *McGhee v. City of Glenns Ferry*, 111 Idaho 921, 729 P.2d 396 (1986) (swing); *Kruschke v. City of New Richmond*, 157 Wis.2d 167, 458 N.W.2d 832 (App.1990) (swing).

**32.** *Rule*, 68 S.W.3d at 858.

PRAC. & REM.CODE §§ 75.001–.004, the fact that someone is outside when he or she is injured is the sole fact triggering that statute's limitation of liability on the part of the landowner. The Legislature did not, however, draft such a broad exception to the traditional duties of care owed entrants on land; instead it circumscribed the limitation on liability by, among other things, defining "recreation" with a detailed list of activities. *Id.* § 75.001(3). While that list is not exhaustive, it must have some meaning. Because the Court's interpretation of recreation in this case essentially writes out of the statute the definition of recreation and the policy choices represented by that definition, I respectfully dissent.

The Court states that "sitting on a swing is the type of activity that the Legislature intended to include as recreation when they enacted the Statute." 89 S.W.3d at 615. But the Court gives no explanation why *sitting on a swing is like the other* activities on the list (which at the time included hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, cave exploration, water skiing and water sports), and cites no evidence of legislative intent to support its conclusion. The Court does note several courts of appeals' decisions concluding that *swinging is included within the scope* of the recreational use statute, but none of those opinions contains anything more than the same conclusory statement the Court now makes about the Legislature's intent. *See City of Lubbock v. Rule,* 68 S.W.3d 853, 858 (Tex.App.-Amarillo 2002, no pet.) (concluding that using playground equipment is "akin to 'picnicking' (albeit without the food)" and thus that it is an activity associated with enjoying nature or the outdoors "cannot reasonably be disputed"); *Flye v. City of Waco,* 50 S.W.3d 645, 647 (Tex.App.-Waco 2001, no pet.) (applying recreational use statute to pushing a swing when plaintiffs "agree on appeal that they went to the park to engage in activities that fall within the scope of [the statute]"); *Kopplin v. City of Garland,* 869 S.W.2d 433, 441 (Tex.App.-Dallas 1993, writ denied) ("We conclude that playing on playground equipment on the City's playground is a recreational activity contemplated under [the recreational use statute]."); *Martinez v. Harris County,* 808 S.W.2d 257, 260 (Tex.App.-Houston [1st Dist.] 1991, writ denied) (concluding that a "reasonable meaning of 'recreation' would include the activity of swinging on a swingset provided for public use"), *disapproved of on other grounds by City of Dallas v. Mitchell,* 870 S.W.2d 21, 23 (Tex.1994).

Neither this Court nor those courts of appeals explain why sitting on a swing is like the other activities on the list. Because the list includes some things but not others, and those choices represent the Legislature's policy decisions regarding those activities, in my view we should discern the common characteristics among the activities on the list, and then determine if swinging shares those characteristics, keeping in mind the history and purpose of the statute.

The Legislature enacted the recreational use statute in 1965. Act of May 29, 1965, 59th Leg., R.S., ch. 677, § 1, 1965 Tex. Gen. Laws 1551–52. The statute originally did not define recreation, but limited landowner liability only when the owner gave permission to another to enter the premises for purposes of "hunting, fishing and/or camping." *Id.* In 1981, the Legislature reorganized the statute, limiting landowner liability to when the owner gave permission to another to enter the premises for "recreational purposes," and defined recreational purposes as "activities such as hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing and water

sports." Act of May 30, 1981, 67th Leg., R.S., ch. 349, § 1, 1981 Tex. Gen. Laws 934. The statute was codified as chapter 75 of the Civil Practice and Remedies Code in 1985. Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3229.

The Legislature further amended various provisions of the statute in 1989, 1995, 1997, and 1999. Act of April 26, 1989, 71st Leg., R.S., ch. 62, § 1, 1989 Tex. Gen. Laws 374–75; Act of May 15, 1989, 71st Leg., R.S., ch. 736, § 1, 1989 Tex. Gen. Laws 3299; Act of May 26, 1995, 74th Leg., R.S., ch. 520, §§ 1–4, 1995 Tex. Gen. Laws 3276–77; Act of April 24, 1997, 75th Leg., R.S., ch. 56, § 1, 1997 Tex. Gen. Laws 124; Act of May 18, 1999, 76th Leg., R.S., ch. 734, 1999 Tex. Gen. Laws 3345. And it has added to the list of activities included as recreation by increments: adding "cave exploration" in 1989, and "bird watching" in 1997. Also in 1997, the Legislature added a general phrase to the end of the list: "any other activity associated with enjoying nature or the outdoors." Act of April 24, 1997, 75th Leg., R.S., ch. 56, § 1, 1997 Tex. Gen. Laws 124. In 1999 the Legislature added to the definition of recreation certain activities taking place inside municipal facilities—hockey, in-line hockey, skating, in-line skating, roller-skating, skateboarding, and roller-blading. Act of May 18, 1999, 76th Leg., R.S., ch. 734, § 1, 1999 Tex. Gen. Laws 3345.

The text and history of the recreational use statute demonstrate that its purpose, like that of similar statutes around the country, is to encourage landowners to allow the public to enjoy outdoor recreation on the landowner's property by limiting the landowner's liability for personal injury. *See Tarrant County Water Control & Improvement Dist. No. 1 v. Crossland,* 781 S.W.2d 427, 437 (Tex.App.-Fort Worth 1989, writ denied), *disapproved of*

*on other grounds by City of Dallas v. Mitchell,* 870 S.W.2d 21, 23 (Tex.1994); *see also McMillan v. Parker,* 910 S.W.2d 616, 618 (Tex.App.-Austin 1995, writ denied) ("The statute appears to have been intended as a limited exception to the traditional common-law duties owed by landowners for the specific purpose of creating recreational facilities for the general public."); *Lipton v. Wilhite,* 902 S.W.2d 598, 600 (Tex.App.-Houston [1st Dist.] 1995, writ denied) ("[T]he purpose of the 1981 amendment [adding additional activities to definition of recreation] was to encourage private landowners to open their land for public recreation free of charge by reducing the possibility of lawsuits by persons injured on the premises."); *see generally* Centner, *Revising State Recreational Use Statutes to Assist Private Property Owners and Providers of Outdoor Recreational Areas,* 9 Buff. Envtl. L.J. 1 (2001); Miller, Annotation, *Effect of Statute Limiting Landowner's Liability for Personal Injury to Recreational User,* 47 A.L.R.4th 262 (1986).

Torres was injured in 1996, when the list of recreational activities included hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, cave exploration, and water skiing and other water sports. Whether one considers playing competitive softball at a municipal softball complex the determinative activity, as did the court of appeals, *see* 40 S.W.3d at 664, or sitting on a swing as the determinative activity, as the Court does today, neither of those activities seems to me to be encompassed within the plain language of the Legislature's nonexhaustive list. The list suggests that recreation includes outdoor activities that generally take place in an open, natural setting, but it does not indicate that all activities that may take place outdoors are included. Nothing in the list or the Court's opinion

identifies legislative intent to include sports facilities and playgrounds.

Moreover, neither of the two most recent additions to the definition of recreation support the Court's conclusion that sitting on a swing is included within the statute's scope. The 1997 amendment adding the general phrase, "any other activity associated with enjoying nature or the outdoors" does not mean that the Legislature intended to expand the scope of the statute to all activities that occur outdoors. While playing or watching softball or using or sitting on a swing are activities that can occur outdoors, the general phrase must be read in connection with the list that precedes it. Hunting, fishing, hiking, camping, nature study, and the other listed activities limit the broader general meaning of recreation and convey a theme different from that of sports facilities and playgrounds. And, as the court of appeals explained, when a statute sets out a specific list followed by a general phrase, "the general phrase is interpreted by the 'ejusdem generis' canon of construction, which states that the general phrase is limited to the same types of things that are listed more specifically." 40 S.W.3d 662, 665. The 1999 amendment that expanded the definition of recreation to include certain indoor activities also does not indicate a broader, general intent to include all sports and playground activities, but instead identifies specific hockey and skating activities.

These later amendments reinforce to me that the Legislature intended the recreational use statute to govern outdoor nature activities and certain specified sporting activities—but not playing organized sports or using playground equipment. The common characteristics of activities on the list are that they take place out on open land or water in places that would typically not be available for public use, not that they simply occur outdoors. And the Court's decision today has the effect of removing parks from the list of governmental functions for which a municipality's sovereign immunity is waived under the Tort Claims Act, simply because parks are usually located outdoors and the Court has decided that any activity occurring outdoors is within the scope of the recreational use statute. See TEX. CIV. PRAC. & REM. CODE § 101.0215(a)(13). By expanding the statute to include things unlike those on the list, the Court is making very different policy choices from those made by the Legislature. And the Court's decision today has the effect of removing parks from the list of governmental functions for which a municipality's sovereign immunity is waived under the Tort Claims Act, simply because parks are usually located outdoors and the Court has decided that any activity occurring outdoors is within the scope of the recreational use statute. See TEX. CIV. PRAC. & REM.CODE § 101.0215(a)(13). If the Legislature had intended to include a municipality's negligent maintenance of a swing set in a municipal park as within the scope of the recreational use statute, it could have easily said so; but it is not this Court's province to enlarge upon the Legislature's policy choices when neither the language of the statute nor the legislative history supports that expansion.

Because the Court attributes more to the Legislature's intent than the Legislature has said in the statute, without citing to any legislative history or other supporting authority, I cannot join its opinion. Accordingly, I respectfully dissent.