02-10-223-CV REH









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT
 OF APPEALS
 SECOND
 DISTRICT OF TEXAS
 FORT
 WORTH
  
 
 


 

NO. 02-10-00223-CV

 

 


 
 
 MARTHA SULLIVAN AND DENNIS SULLIVAN
 
 
  
 
 
 APPELLANT
 
 


                                                                                                                             

V.

 


 
 
 THE CITY OF
 FORT WORTH, TEXAS
 
 
  
 
 
 APPELLEE
 
 


 

                                                                                                                             

------------

 

FROM THE
348TH DISTRICT COURT OF TARRANT COUNTY

 

------------

 

MEMORANDUM OPINION ON REHEARING[1]

 

------------

          We have considered Appellee’s motion for
rehearing.  We deny the motion but withdraw our February 3, 2011 opinion and
judgment and substitute the following.

          Appellants Martha and Dennis Sullivan (the
Sullivans) appeal the trial court’s order granting the City of Fort Worth’s
(the City) plea to the jurisdiction.  The City claimed governmental immunity
from the Sullivans’ claims.

Background

One evening in 2007, the Sullivans attended their
granddaughter’s wedding, which was held in the Japanese Garden (the Garden),
part of the city-owned Fort Worth Botanic Gardens.  While leaving the wedding,
Mrs. Sullivan fell on one of the designated footpaths, breaking her ankle.  The
Sullivans claim that the winding path, which included stone and wood steps, was
inadequately lit and that they had to make their way in the dark.  Mrs.
Sullivan could not see the edges of the steps and misjudged the distance
between the steps, causing her fall.  The Sullivans alleged in their petition,
among other things, that the City failed to properly construct, install,
inspect, maintain, repair, and light the pathways; to provide handrails or
adequate lighting; and to warn the wedding guests of the nature and condition
of the stairs.  The Sullivans claimed that the City’s governmental immunity was
waived under the Texas Tort Claims Act.  See Tex. Civ. Prac. & Rem.
Code Ann. §§ 101.001–.109 (Vernon 2011).

The City filed a plea to the jurisdiction, arguing that
the trial court lacked subject-matter jurisdiction as a matter of law because
the claims were barred by governmental immunity.  See id. § 101.056. 
As admitted in their brief on appeal, the City’s argument in their plea to the
jurisdiction was not that the Sullivans failed to allege a premises liability
cause of action but that it was not an actionable claim because the Sullivans’
allegations of negligence were for discretionary decisions for which there is
no waiver.  The City alternatively argued that if it was not immune, the Recreational
Use Statute applies because the Sullivans were engaging in recreation at the
time of the accident.  See Tex. Civ. Prac. & Rem. Code Ann. § 75.002
(Vernon 2011).  Under the Recreational Use Statute, the City would only owe the
Sullivans the duty it would owe to a trespasser, id., and the City
argued that the Sullivans could not show that it violated that duty.

After a hearing, the court granted the City’s plea to
the jurisdiction.  The Sullivans requested findings of facts and conclusions of
law, but the court refused, claiming the hearing was not evidentiary and thus,
findings of facts and conclusions of law were not appropriate.  In two issues,
the Sullivans argue that the trial court erred in granting the City’s plea to
the jurisdiction because the Sullivans have properly alleged a premises
liability cause of action under the Texas Tort Claims Act and because the
Recreational Use Statute does not apply.  For the reasons set forth below, we affirm
the trial court’s judgment in part and reverse and remand in part.

Standard of Review

Whether the trial court has subject-matter
jurisdiction is a question of law that we review de novo.  Tex. Natural Res.
Conservation Comm’n v. IT–Davy, 74 S.W.3d 849, 855 (Tex. 2002).  A plea to
the jurisdiction is a dilatory plea that challenges the trial court’s
subject-matter jurisdiction.  Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d
547, 554 (Tex. 2000).  It is used to defeat a cause of action without regard to
whether the claims asserted have merit.  Id.

The plaintiff has the burden of alleging facts that
affirmatively establish the trial court’s subject-matter jurisdiction.  Tex.
Ass’n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993).  We
construe the pleadings liberally in favor of the plaintiff, look to the pleader’s
intent, and accept the pleadings’ factual allegations as true.  Tex. Dep’t
of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004).  If,
as in this case, a plea to the jurisdiction challenges the existence of
jurisdictional facts, we consider relevant evidence submitted by the parties
that is necessary to resolve the jurisdictional issues.  Id. at 227; Bland,
34 S.W.3d at 555.

The plea to the jurisdiction standard generally
mirrors that of a traditional motion for summary judgment.  Miranda, 133
S.W.3d at 228; see Tex. R. Civ. P. 166a(c).  The governmental unit is
required to meet the summary judgment standard of proof for its assertion that
the trial court lacks jurisdiction.  Miranda, 133 S.W.3d at 228.  Once
the governmental unit meets its burden, the plaintiff is then required to show
there is a disputed material fact regarding the jurisdictional issue.  Id. 
We take as true all evidence favorable to the nonmovant, and we indulge every
reasonable inference and resolve any doubts in the nonmovant’s favor.  Wise
Reg’l Health Sys. v. Brittain, 268 S.W.3d 799, 805 (Tex. App.—Fort Worth
2008, no pet.) (citing Miranda, 133 S.W.3d at 228).  If the evidence
creates a fact question regarding jurisdiction, the trial court must deny the
plea to the jurisdiction and leave its resolution to the factfinder.  Miranda,
133 S.W.3d at 227–28.  But if the evidence is undisputed or fails to raise a
fact question on the jurisdictional issue, the trial court rules on the plea to
the jurisdiction as a matter of law.  Id. at 228.

Discussion

I.            
Premises Liability Claims
Under the Tort Claims Act

The
City claims governmental immunity from the Sullivans’ suit.  Unless waived by
the State, governmental immunity defeats a trial court’s subject-matter
jurisdiction.  Id. at 225.  The Texas Tort Claims Act waives
governmental immunity for certain torts, including personal injury “caused by a condition or use of tangible personal or real
property if the governmental unit would, were it a private person, be liable to
the claimant according to Texas law.”  Tex. Civ. Prac. & Rem. Code Ann.
§§ 101.021, .025.  The Act also contains a discretionary powers exception,
which preserves immunity for a claim based on

(1)        
the failure of a governmental unit to perform an act that the unit is not
required by law to perform; or

 

(2)     a
governmental unit’s decision not to perform an act or on its failure to make a
decision on the performance or nonperformance of an act if the law leaves the
performance or nonperformance of the act to the discretion of the governmental
unit.

 

Id.
§ 101.056.  The discretionary powers exception avoids “judicial review or
interference with those policy decisions committed to the other branches of
government.”  Stephen F. Austin State Univ. v. Flynn, 228 S.W.3d 653,
657 (Tex. 2007).

          Courts
employ two different tests for determining what constitutes a discretionary
decision.  Id.  One test distinguishes between policy and
operational-level decisions, such as the distinction between the policy of when
and under what circumstances to release water from a spillway and the
operational decision of the volume of outflow.  See State v. Terrell,
588 S.W.2d 784, 788 (Tex. 1979).  The other test distinguishes between design
and maintenance, such as the distinction between designing a bridge without
lighting and failing to maintain lighting that was installed.  See Tarrant
Cnty. Water Control v. Crossland, 781 S.W.2d 427, 433 (Tex. App.—Fort Worth
1989, writ denied).  In employing these tests, we must liberally construe the
Tort Claims Act, Robinson v. Cent. Tex. MHMR Ctr., 780 S.W.2d 169, 170
(Tex. 1989), while also recognizing that the waiver of immunity is “limited,
not unlimited,” Dallas Cnty. Mental Health & Mental Retardation v.
Bossley, 968 S.W.2d 339, 341 (Tex. 1998).

The Sullivans’ claims can be divided into four
categories:  Claims regarding the City’s maintenance of the Garden; claims regarding
the adequacy of lighting; claims regarding the safety measures implemented; and
claims that the City failed to warn them about the condition of the stairs.

The Sullivans first claim that the City failed to
maintain the trees and other greenery around the lights to prevent the trees
from blocking the lights.  Specifically, they pleaded, “Nearby trees blocked
any natural or generated light that might have been available, and foliage from
the trees blocked existing lights in the trees.”  The affidavit of Erdie
Allsup, the Executive Director of the Fort Worth Botanical Society, which was
attached to the City’s plea to the jurisdiction, supported the Sullivans’
factual allegation that lights were placed in the trees “along the pathways to
provide light . . . so that guests of a lessee would be able to follow a
pathway back to their cars.”  Further, Allsup agreed in her deposition that if
the lighting in the area where the fall took place was not adequate, that would
create a dangerous condition for persons descending the stairwell at night.  In
his deposition, Henry Painter, the Director of the Fort Worth Botanic Gardens, stated
that it was possible for foliage from the trees to block the light and that
foliage would have to be maintained in order for some of the lights to shine
down to the path.  Foliage trimming is a maintenance decision for which courts
have repeatedly held that governmental immunity is waived under the Tort Claims
Act.  See, e.g., City of Irving v. Seppy, 301
S.W.3d 435, 442 (Tex. App.—Dallas 2009, no pet.) (holding that the city was not
immune from appellants’ claims regarding the maintenance of the catwalk from
which decedent fell); City of Dallas v. Heard, 252 S.W.3d 98, 108 (Tex.
App.—Dallas 2008, pet. denied) (holding that pleading that the city
failed to maintain security cameras was sufficient to allege a premises defect
claim).  The City claims the maintenance decisions are “discretionary” because
they require approval.  But the test is not whether decisions require
approval.  Most acts performed by subordinate government employees require some
sort of approval from a superior.  The test divides protected policy decisions
from the implementation and maintenance of that policy.  The policy decision to
keep the park maintained, as opposed to letting it grow wildly, is a protected
discretionary decision.  The subsequent acts to implement that policy of
trimming trees are not protected.  See Flynn, 228 S.W.3d at 658 (holding
that decisions concerning timing and direction of water spray were not
protected).

The Sullivans have claimed that the City did not
provide adequate lighting by failing to install enough lights and failing to
properly place the lights.  The City is immune from liability for its decision
whether to install lights in the Garden to make it usable at night.  See
Crossland, 781 S.W.2d at 433.  Further, the City is immune for the
original design of the Garden, which includes where light sources will be
located and the number of those locations.  However, contrary to the City’s
repeated assertions, the Sullivans’ pleading also contains allegations of
negligence for failing to provide adequate lighting by alleging non-design or
maintenance issues.  Specifically, the Sullivans allege that the City “failed
to properly . . . inspect, maintain, repair and light the stairs.”  In its
motion for rehearing, the City isolates an individual allegation to support its
position that the Sullivans were merely asserting a claim based on the design
decision not to light the foot of the stairs.  This completely ignores the
remaining detailed allegations of maintenance issues.  Once the City decided to
make the Garden available to visitors in the evening, it is not immune from
liability for the subsequent decisions involved in implementing that policy,
such as the wattage of the light bulbs or failure to inspect and replace
burned-out bulbs to avoid inadequate lighting.  The City chose not to present evidence
at the hearing on the plea to the jurisdiction that the original design encompassed
decisions such as wattage or replacement of the light bulbs.[2] 
These are operational decisions for which immunity is waived.  See Tex.
Civ. Prac. & Rem. Code Ann. § 101.056; Flynn, 228
S.W.3d at 658 (“[T]he decisions here concerning when and where the water was to
spray were operational- or maintenance-level decisions, rather than policy
formulation.”).

The Sullivans have also made claims that the City
failed to install safety measures other than lighting to make the pathways
safely traversable at night, such as handrails along the entire path.  These
claims address the design of the Garden and the City retains its immunity from
such claims.  See Crossland, 781 S.W.2d at 433.  The Sullivans
allege a failure to provide safety measures by failing to provide temporary and
portable lighting.  These claims are clearly challenges to the City’s policy
decisions or its failure to act when no particular action is required by law
and these claims are not actionable.  See Tex. Civ. Prac. & Rem.
Code Ann. § 101.056; see also State v. Miguel, 2 S.W.3d 249, 251
(Tex. 1999) (holding that the decision as to what safety or warning system to
use is discretionary).  As to the Sullivans’ claims that the City failed to
warn them of the condition or nature of the stairs, the Sullivans do not claim
that the steps were damaged or in a state of disrepair.  These claims are merely
a recasting of their other claims against the design of the Garden, and the
City is immune from liability for the design of the Garden.  See Salcedo v.
El Paso Hosp. Dist., 659 S.W.2d 30, 32 (Tex. 1983) (holding that complaints
about “some condition” of property require allegations of defective or
inadequate property).

In
sum, the City is not immune from those claims which attack its operational
decisions; to wit, the claims against the maintenance of the lighting and the
foliage in the Garden.  We continue our analysis of those claims below to
determine the duty owed and whether the Sullivans pleaded facts to support a
cause of action based on that duty.  As to the claims which attack the design
of the Garden, we sustain the trial court’s ruling that it has no jurisdiction
over them.

II.          
The Recreational Use
Statute

The
City argues that, for the claims for which it is not immune, the Recreational
Use Statute applies.  See Tex. Civ. Prac. & Rem. Code Ann. § 75.002(c)
(Vernon 2011).  The Recreational Use
Statute states

(c)   If
an owner, lessee, or occupant of real property other than agricultural land
gives permission to another to enter the premises for recreation, the owner,
lessee, or occupant, by giving the permission, does not:

 

(1)    
assure that the premises are safe for that purpose;

 

(2)    
owe to the person to whom permission is granted a greater degree of care
than is owed to a trespasser on the premises; or

 

(3)   assume
responsibility or incur liability for any injury to any individual or property
caused by any act of the person to whom permission is granted.

 

Id.  This
limitation on liability does not apply where the owner, lessee, or occupant has
been “grossly negligent or has acted with malicious intent or in bad faith.”  Id.
§ 75.002(d).  “Recreation” is defined as

an activity such as:

(A)   hunting;

(B)   fishing;

(C)  swimming;

(D)  boating;

(E)   camping;

(F)   picnicking;

(G)  hiking;

(H)  pleasure
driving, including off-road motorcycling and off-road automobile driving and
the use of all-terrain vehicles;

(I)    nature
study, including bird-watching;

(J)   cave
exploration;

(K)   waterskiing
and other water sports;

(L)   any
other activity associated with enjoying nature or the outdoors;

(M)  bicycling
and mountain biking;

(N)  disc
golf;

(O)  on-leash
and off-leash walking of dogs; or

(P)   radio
control flying and related activities.

 

Id.
§ 75.001(3).

The
City makes three arguments as to why the Recreational Use Statute applies. 
First, the Japanese Garden is a city park and thus its purpose is for
recreation.  Second, the wedding reception involved a meal and thus constitutes
“picnicking.”  Third, an outdoor wedding, such as the one that the Sullivans
attended, is an “activity associated with enjoying nature or the outdoors.”

Statutory construction is a legal question we review de
novo.  City of Rockwall v. Hughes, 246 S.W.3d 621, 625 (Tex. 2008).  In
construing statutes, we ascertain and give effect to the legislature’s intent
as expressed by the language of the statute.  Id.  We construe a statute
according to the plain meaning of its words unless a contrary intention is
apparent from the context, or unless such a construction leads to an absurd
result.  Id. at 625–26.

As
to the City’s first argument, the Texas Supreme Court has held that it is not
the landowner’s or the injured party’s intent for the land that matters but
what the injured party was doing at the time she was injured that controls.  City
of Bellmead v. Torres, 89 S.W.3d 611, 614 (Tex. 2002).  Thus, the fact that
the Japanese Garden is a park is not determinative of whether the Recreational
Use Statute applies.

As
to the second argument, we believe it stretches the definition of picnicking to
include a seated wedding reception dinner.  The City claims, without support,
that all meals taken outdoors are “by definition” a picnic.  The definition in Webster’s
Dictionary, however, describes a picnic as “a social entertainment at which
each person contributes food to a common table; . . . an excursion or outing
with food usu[ally] provided by members of the group and eaten in the open.” 
Webster’s Third New International Dictionary 1711 (2002).  The Japanese Garden
has its own restaurant which is the exclusive caterer for events at the Garden,
including the Sullivans’ granddaughter’s reception, and picnicking is not
allowed in the Garden.  The City has not argued that dining at a restaurant is recreation
as defined by the statute.  While we do not believe the definition of picnic necessarily
hinges on who brings the food, we do think that a wedding reception dinner is
more akin to al fresco dining at the Garden’s restaurant than to a picnic as traditionally
understood.  In any event, the Sullivans were not at the Garden to eat, they
were there for a wedding.  The reception meal was one part of the evening, and
Mrs. Sullivan was not injured while she was dining.  The fact that food was
served and consumed as one stage of a sequence of events at a wedding does not
mutate the entire event into a picnic.

Finally,
we must address whether a wedding itself is “recreation.”  The City does not
argue that all weddings are recreation, just outdoor weddings because they
incorporate a natural “ambiance.”  Webster’s Dictionary defines
recreation as synonymous with diversion or play.  Webster’s at 1899.  If we had
to categorize all of human activity as either work or play, then perhaps we
would define a wedding as recreation.  But we do not think the statutory
definition of recreation is so broad as to encompass all activity beyond work
as recreation as long as it is conducted outdoors.  See Act of May 30,
1981, 67th R.S., ch. 349, 1981 Tex. Gen. Laws 934 (showing that the original version
of HB 749 included “visiting historical, archaeological, scenic, or scientific
sites” in definition of the recreation but the language was removed).  No other
activity listed in the statute would so depend on its location.  See Tex.
Civ. Prac. & Rem. Code Ann. § 75.001.  As Justice Hankinson stated in her
dissent in Torres, the list of activities which are considered
recreation does not indicate a legislative intent to “expand the scope of the
statute to all activities that occur outdoors.”[3] 
89 S.W.3d at 618.

The
doctrine of ejusdem generis and the similar doctrine of noscitur a
sociis apply to restrict the potentially broad meaning of “any other
activity associated with enjoying nature or the outdoors.”  We employ these
rules to construe specific terms no more broadly than the legislature intended. 
City of San Antonio v. City of Boerne, 111 S.W.3d 22, 29 (Tex. 2003). 
Under ejusdem generis, when general words follow specific examples, we
treat the general words as limited and apply them only to the same kind or
class as those expressly mentioned.  Id.  Noscitur a sociis means
that the meaning of particular words in a statute may be ascertained by
reference to other words associated with them in the same statute.  Id.;
see also Gustafson v. Alloyd Co., Inc., 513 U.S. 561, 575, 115 S.
Ct. 1061, 1069–70 (1995) (statutory language “must be understood against the
background of what Congress was attempting to accomplish”).

The
statute intends to immunize land owners from suit where the injured party was
engaging in activity which bears some risk of danger.  See House Study
Group, Bill Analysis, Tex. H.B. 749, 67th Leg., R.S. (1981) (stating that
“[t]he original purpose of [the Recreational Use Statute] was to keep private
land open for hunting, fishing, and camping” and that many other activities
added to the statute “require wide open spaces or lakes and streams”).  A
wedding is not the type of activity in which people engage assuming a risk of
injury from physical activity.  Thus, we do not think that the wedding transforms
from a ceremony to recreation simply because it occurred outside.  We believe
there has to be something more—an activeness, a physical exertion, or immersion
in the physical elements of nature—that is essential to finding an activity
“associated with enjoying nature or the outdoors” as the statute intends.  Cf.
Torres, 89 S.W.3d at 615 (holding that swinging on a swing set is a type
of activity associated with enjoying the outdoors); City of Lubbock v. Rule,
68 S.W.3d 853, 858 (Tex. App.—Amarillo 2002) (holding that “journeying to a
park to enjoy its facilities and playground equipment is akin to ‘picnicking’
(albeit without the food) and within the category of an ‘activity associated
with enjoying nature or the outdoors’”), overruled on other grounds by
State v. Shumake, 199 S.W.3d 279 (Tex. 2006).

To
be a guest at a wedding is not an activity so similar to the sports and hobbies
listed in the Recreational Use Statute that we think the legislature intended
its inclusion.  See Gustafson, 513 U.S. at 575, 115 S. Ct. at 1069–70
(defining “communication” to mean only public communications); Tex. Dep’t of
Transp. v. York, 284 S.W.3d 844, 847–48 (Tex. 2009) (refusing to define
“special defects” to include loose gravel because it did not share
characteristics with the listed examples in the statute); Fiess v. State
Farm Lloyds, 202 S.W.3d 744, 751 (Tex. 2006) (holding that “water damage”
in an insurance policy must mean “something more substantial than every tiny
water leak or seep” such as “the kinds of uncommon and catastrophic losses for
which homeowners obtain insurance, not for the common maintenance items for
which they do not”).  We therefore hold that the Sullivans were not engaging in
recreation at the time of the accident.  Thus, the Recreational Use Statute
does not apply.[4]

III.         
Duty Owed Under § 101.022

Under the Tort Claims Act, the City owes the Sullivans
a duty “that a private person owes to a licensee on private property, unless
the claimant pays for use of the premises.”  Tex. Civ. Prac. & Rem. Code
Ann. § 101.022(a).  If the Sullivans paid for the use of the premises, they are
invitees.  See Seppy, 301 S.W.3d at 441; Garcia v. State,
817 S.W.2d 741, 742 (Tex. App.—San Antonio 1991, writ denied).  This
distinction is relevant to the elements of the Sullivans’ cause of action.  State
v. Williams, 940 S.W.2d 583, 584–85 (Tex. 1996).  If the Sullivans were
licensees, they must show that the City had actual knowledge of the
unreasonable risk of harm created by the stairs.  See State Dep’t of
Highways v. Payne, 838 S.W.2d 235, 237 (Tex. 1992).  If the Sullivans are
invitees, they only need to show that the City knew or should have known of the
risk.  Id.

The City argues that the Sullivans are licensees and
that they have not pleaded facts demonstrating that the City had actual
knowledge of the dangerous condition of the steps.  The Sullivans claim they
are invitees because their grandson-in-law, Jeremy Tekell, paid a rental fee
for the Garden.  The City argues that the rental fee was not an “admission
payment” for the guests because Mr. Tekell paid a flat fee.  That is, Mr.
Tekell would have paid the same rental fee regardless of the number of guests.

The statute does not require a per capita admission
price.  The statute’s only requirement is that the claimant “pays for use of
the premises.”  Tex. Civ. Prac. & Rem. Code Ann. § 101.022(a).  Mr.
Tekell’s rental fee included the admission of “up to 250 guests.”  It appears
from the form agreement that another price would have been charged if more than
250 guests attended.  Further, the wedding was held after normal park hours,
and the park remained open only because Mr. Tekell had reserved it.  The peace
officer hired to provide security at the wedding testified that part of his
duty was “making sure that no uninvited guests come in” and that he could
arrest any “wedding crashers.”  Visitors were only admitted to the Garden after
they identified themselves as wedding guests.  See Dallas-Fort Worth
Int’l Airport Pub. Facility Improvement Corp. v. Banks, No. 2-09-176-CV,
2010 WL 87865, at *4 (Tex. App.—Fort Worth Jan. 7, 2010, pet. denied) (mem.
op.) (noting that evidence that appellant would not have been granted entry
into airport terminal where she fell created a genuine issue of material fact
concerning her status as an invitee).[5] 
Had Mr. Tekell not paid the rental fee to lease the Garden, the Garden would
have been closed to everyone, including the Sullivans.  It was Mr. Tekell’s
rental fee which allowed the Sullivans’ use of the premises that night.  If the
bride and groom had less than 250 guests, then the cost per guest would
increase but it would not lessen the fact that a fee was charged and paid for
their entry.[6]

The City cites three cases in support of its argument
that the rental fee was merely related to the use of the premises, not for
the use of the premises.  See Clay v. City of Fort Worth, 90 S.W.3d 414
(Tex. App.—Austin 2002, no pet.); City of Dallas v. Ortiz, No.
05-99-00436-CV, 2000 WL 688208 (Tex. App.—Dallas May 18, 2000, pet. denied)
(not designated for publication); Graf v. Harris Cnty., 877 S.W.2d 82
(Tex. App.—Houston [1st Dist.] 1994, writ denied).  In both Ortiz and Graf,
the plaintiff never claimed to have paid for entry to the premises.  Ortiz,
2000 WL 688208, at *3; Graf, 877 S.W.2d at 85.  In Clay, the court
dismissed the plaintiff’s argument that because her employer, Southwestern
Bell, was in a revenue-sharing relationship with the city, Southwestern Bell
had paid for the use of city property where it had installed telephones.  90
S.W.3d at 417.  In doing so, the court stated that “[o]nly a fee charged for
entry onto a particular premise is sufficient to confer invitee status under
section 101.022(a).”  Id.  Unlike the cases cited by the City, this fee
was tied to entry on to a particular premise (here, the Garden) for specific
people (up to 250 wedding guests) at a specific time (from 4:00 pm to 10:00 pm
on April 20, 2007).  No one else would have been granted entry at that time.  As
a matter of law, the Sullivans paid for use of the premises and thus are owed
the duty the City would owe to an invitee.  See Miranda, 133
S.W.3d at 226 (noting that undisputed evidence of jurisdictional facts
establishes a trial court’s jurisdiction as a matter of law).

The City has consistently argued that invitee status
does not apply to the Sullivans without attacking their cause of action if
invitee status did apply.  We hold, however, that it does.  As invitees, the
Sullivans only needed to plead facts sufficient to allege that the City knew or
should have known of the risk of danger from the low lighting conditions.  See
Payne, 838 S.W.2d at 237.  Because the City has not argued that the
Sullivans have not pleaded sufficient facts to support their allegation that
the City should have known of the dangerous condition, it waived any complaint
as to that issue, and we deny its plea to the jurisdiction on these claims as a
matter of law.[7]
 See Miranda, 133 S.W.3d at 227.

Conclusion

We
affirm the trial court’s order granting the plea to the jurisdiction as to the
previously specified claims that challenge the design of the Garden.  Because the
Sullivans claim that the City should have known of the dangerous condition of
the stairs is uncontested, we hold that the trial court erred in part in granting
the City’s plea to the jurisdiction.  As to those claims regarding operational
decisions, we reverse the trial court’s judgment and remand the case for
further proceedings consistent with this opinion.

 

 

                                                                             LEE
GABRIEL

                                                                             JUSTICE

 

PANEL:  WALKER, MEIER, and GABRIEL, JJ.

 

DELIVERED:  May 19, 2011









[1]See
Tex. R. App. P. 47.4.





[2]In
reviewing a plea to the jurisdiction, we accept the pleadings’ factual
allegations as true and resolve any doubts in the nonmovant’s favor.  Miranda,
133 S.W.3d at 226, 228.  It was thus the City’s burden to provide evidence supporting
its assertion that the trial court lacks jurisdiction.  Id. at 228.





[3]While
we note that Justice Hankinson’s comments appear in a dissenting opinion, the
supreme court has not taken a contradictory position.  See Torres, 89
S.W.3d at 615 (holding, “in light of the general wording of the Texas statute
and the purpose of the statute,” that swinging on a swing is recreation).





[4]Because
the Recreational Use Statute does not apply, we need not address the City’s
argument that Mrs. Sullivan’s injuries were caused “by her own act.”  See
Tex. Civ. Prac. & Rem. Code Ann. § 75.002(c)(3).  Nor do we address the
Sullivans’ issue concerning the required duty owed by the City to trespassers.





[5]In
Banks, as the City points out, there was a fact issue as to whether the
plaintiff was an invitee.  2010 WL 87865, at *4.  The issue existed because the
plaintiff paid for use of the airplane, not directly for entry to the terminal
where she fell.  Id.  Here, the Sullivans specifically paid (or were
paid for) for the use of the premises on which Mrs. Sullivan fell, and thus no
similar fact issue exists.





[6]We
do not think it dispositive that it was Mr. Tekell and not the Sullivans
themselves who paid the rental fee.  The fee was paid for their entry, and
without that fee, no guests could enter.  Mr. Tekell paid for the entry of up
to 250 guests, and the Sullivans were two of those guests.  In any event, the
City waived any argument as to the definition of “claimant” under the statute
by failing to make the argument until its motion for rehearing.  See Coastal
Liquids Transp., L.P. v. Harris Cnty. Appraisal Dist., 46 S.W.3d 880, 885
(Tex. 2001).  In fact, the City claimed any such argument was a “non-sequitur”
and refused to address it on appeal.





[7]The
City even admitted in its brief on appeal that “[the Sullivans’] evidence would
support a premises liability claim for a dangerous condition.”