In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-20-00189-CV**

**CITY OF CLEVELAND, TEXAS, Appellant**

**V.**

**MACIE MARTIN LAFRANCE AND PENNY MARTIN, Appellees**

**On Appeal from the 75th District Court**
**Liberty County, Texas**
**Trial Cause No. CV1813138**

**MEMORANDUM OPINION**

Macie Martin LaFrance and Penny Martin (Plaintiffs or Appellees) sued the City of Cleveland, Texas (the City or Appellant) and the Cleveland Livestock Show and Dairy Day, Inc.[1] (the Livestock Show) after Macie alleged she suffered an electrical shock from an electrical outlet when she plugged her cell phone into an

---

[1] City of Cleveland filed a cross-claim against Cleveland Livestock Show and Dairy Day, Inc. Cleveland Livestock Show and Dairy Day, Inc. are not a party in this appeal. So, we reference Cleveland Livestock Show and Dairy Day, Inc. only as necessary.

electrical outlet while she was working at the concession stand in Stancil Park in Cleveland, Texas. Macie's mother, Penny, who was also working at the concession stand, witnessed the incident. In this interlocutory appeal, the City appeals from the trial court's denial of its combined No Evidence Motion for Summary Judgment on Plaintiffs' Negligence Claim and Plea to the Jurisdiction.[2] We affirm.

Background

In Plaintiffs' petition,[3] the Plaintiffs alleged that Macie was volunteering in the concession stand during the Cleveland Livestock Show and Dairy Day event at Stancil Park, and she wanted to charge her cell phone, so she "plugged into an electrical outlet [and she] was immediately electrocuted and sustained serious injuries." According to the petition, Macie's mother, Penny Martin, was also volunteering that day in the concession stand, and Penny alleged she suffered mental anguish after she witnessed her daughter's electrocution. The Plaintiffs alleged that "a dangerous condition in the form of a premises defect involving the electrical

---

[2] Under Section 51.014(a)(8) of the Texas Civil Practice and Remedies Code, the City is entitled to an interlocutory appeal of the denial of its plea to the jurisdiction and the denial of its no-evidence motion for summary judgment. *See Thomas v. Long*, 207 S.W.3d 334, 339 (Tex. 2006) ("The Legislature provided for an interlocutory appeal when a trial court denies a governmental unit's challenge to subject matter jurisdiction, irrespective of the procedural vehicle used.… To be entitled to an interlocutory appeal, section 51.014(a)(8) requires the denial of a jurisdictional challenge."); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8).

[3] The allegations we discuss are from Plaintiffs' First Amended Petition, the live pleading at the time of the trial court's ruling.

system existed on the property owned or controlled in whole or in part by [t]he City[.]"[4] Plaintiffs alleged that the City had actual knowledge of a dangerous condition on the premises and that the condition created an unreasonable risk of harm to Plaintiffs. According to the petition, Plaintiffs did not know and had no reason to know of the dangerous condition at the time of their injuries, and the City failed to warn Plaintiffs or make the condition reasonably safe despite having actual knowledge of the dangerous and unreasonable risk of harm to the Plaintiffs. Plaintiffs alleged that the City "acted with willful, wanton or gross negligence in allowing the dangerous condition to exist on its premises and in failing to either warn the Plaintiffs of the dangerous condition or make the condition reasonably safe." Plaintiffs further alleged that the City: knew or should have known or discovered the dangerous condition on its premises and should have realized that the condition posed an unreasonable risk or harm to Plaintiffs; failed to exercise reasonable care to warn the Plaintiffs, protect the Plaintiffs from the danger, and inspect the premises to discover the dangerous condition that posed an unreasonable risk to Plaintiffs; failed to discover, remove, or repair the dangerous condition that injured the

---

[4] Plaintiffs also alleged, in the alternative, that their injuries were caused by the use or misuse of tangible personal property on the part of the City. In their subsequent pleadings, Plaintiffs asserted that this is a premise defect case, and they appear to have abandoned the alternative cause of action. That said, we need not analyze the allegations of use or misuse of tangible personal property because the City did not challenge that allegation in its plea to the jurisdiction.

Plaintiffs; failed to provide necessary and proper procedures; failed to maintain and inspect the premises; and failed to take any action to correct the dangerous condition. According to Plaintiffs, the alleged acts and omissions and negligence of the City proximately caused Plaintiffs' injuries and damages. The petition alleged the City "waived immunity as to Plaintiffs' claims and that there are no exceptions to the waiver of immunity." Plaintiffs pleaded that they sent proper and timely notice to the City and that all conditions precedent for bringing their claims were met. Macie sought damages in the amount of at least $250,000 for past and future physical pain and mental anguish, past and future physical impairment, past and future disfigurement, and past and future medical expenses. Penny sought damages in the amount of at least $100,000 for mental anguish.

The City filed an Original Answer and then its First Amended Original Answer, and the City denied all allegations. In its First Amended Original Answer, the City asserted, among other things, a general denial, exemption and limitation of liability under the Tort Claims Act, that the trial court lacked jurisdiction due to immunity, that Macie was contributorily negligent, and that the Livestock Show (over which the City exerted no control) was the sole or contributing cause of Macie's alleged injuries.

The City filed a No Evidence Motion for Summary Judgment and Plea to the Jurisdiction arguing that the Recreational Use Statute applied and, because Plaintiffs

4

provided no evidence that they were injured from the City's willful, wanton, or grossly negligent conduct, and therefore summary judgment was appropriate. In the alternative, the City argued that the trial court lacked jurisdiction because there was no valid waiver of immunity as there was no evidence that, under the licensee standard for premises defects, the City committed any willful, wanton, or grossly negligent conduct. The City also incorporated by reference the Livestock Show's argument that there was no evidence of an identifiable condition that was the subject of actual knowledge by the City. According to the City, "[i]n this case, ownership and control of the concession stand in Stancil Park is unknown; [] there is no evidence of a dangerous condition in the concession stand in Stancil Park, no evidence of actual knowledge of the dangerous condition, and no evidence that, after such knowledge was possessed, [the City] willfully, wantonly, or through gross negligence failed to repair, make safe or warn Plaintiffs about the condition."

Plaintiffs responded to the City's No Evidence Motion for Summary Judgment and Plea to the Jurisdiction and Alternative Motion for Continuance (Response). In their Response, the Plaintiffs argued the City, including City Manager Kelly McDonald, knew about an electrical problem at the concession stand before Macie was injured. Plaintiffs alleged that the electrical problem at the concession stand was brought up at several department head meetings chaired by McDonald and that no warning was ever given to the Livestock Show or Plaintiffs. Plaintiffs further

5

alleged that the concession stand was located at Stancil Park, which is owned by the City, and that the concession stand was owned or controlled by the City. As evidence in support of their Response, Plaintiffs attached an affidavit of licensed electrician Greg Henderson, a copy of the incident report discussed by McDonald during her deposition that was attached to her deposition, excerpts from the transcript of McDonald's deposition testimony, an affidavit of Penny Martin, an affidavit of the City's Former Building Official Glen Barnhill, excerpts from the transcript of the Livestock Show CEO Jennifer Lewis's deposition testimony, and emails between Lewis and Frieda Joyce.

The City filed Objections to Summary Judgment Proof and a Reply to Plaintiffs' Response to No-Evidence Motion for Summary Judgment on Plaintiffs' Negligence Claim and Plea to the Jurisdiction, objecting to Barnhill's and Henderson's affidavits. The City did not obtain a ruling on the objections. The City argued in its Reply that no valid waiver of immunity has occurred because there was no evidence that the City owned or controlled the concession stand at the time of the incident and no evidence that the City had actual knowledge of a dangerous condition or committed willful, wanton, or grossly negligent conduct involving the concession stand.

The trial court signed an order denying both the City's no-evidence motion for summary judgment and plea to the jurisdiction. The City appealed.

## Appellate Issue

In one issue, the City argues that the trial court erred in denying its motion for summary judgment and plea to the jurisdiction because, without evidence of willful, wanton, or grossly negligent conduct, Plaintiffs cannot "trigger[] a waiver of governmental/sovereign immunity to suit" consistent with sections 101.022 or 75.002(c) of the Civil Practice and Remedies Code so that a trial court has jurisdiction. According to the City, there is no evidence it controlled the concession stand at the time of the incident, and even if it did control it, there is no evidence, that under section 101.022 of the Civil Practice and Remedies Code, Plaintiffs as licensees were injured as the result of gross negligence or willful or wanton conduct by the City involving a defect in the electrical system of the concession stand, or that the City possessed actual knowledge of the risk of an electrical shock and failed to make the risk reasonably safe or warn Plaintiffs about its existence, or that a defect in Macie's phone charger and not the outlet's electrical wiring caused the short and shock. Alternatively, the City argues that with respect to the Recreational Use Statute, section 75.002(c) of the Civil Practice and Remedies Code, there is no evidence that the City had actual subjective awareness of a defect in the electrical system of the concession stand and proceeded with conscious indifference to the defect, triggering an immunity waiver.

Governmental Immunity and the Texas Tort Claims Act (TTCA)

Governmental immunity protects political subdivisions of the State, including cities, counties, and school districts, from suit and liability. *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 & n.3 (Tex. 2003); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3)(B) (defining "governmental unit" to include cities). A city's immunity from suit depends on whether its actions are characterized as governmental or proprietary functions. *Tooke v. City of Mexia*, 197 S.W.3d 325, 343 (Tex. 2006). Generally, governmental functions are those acts involving governmental matters done for the public's benefit. *Id.*; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a) (providing a nonexclusive list of acts classified as governmental for tort claims purposes).

A city receives no protection from suits for torts committed in the performance of its proprietary functions. *Tooke*, 197 S.W.3d at 343. A city's proprietary functions are those conducted "'in its private capacity, for the benefit only of those within its corporate limits, and not as an arm of the government[.]'" *Id.* (quoting *Dilley v. City of Houston*, 222 S.W.2d 992, 993 (Tex. 1949)); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(b) (providing a nonexclusive list of acts classified as proprietary for tort claims purposes). If a city is negligent while engaged in the performance of a proprietary function, it is liable to the same extent as a private

8

entity or individual. *Gates v. City of Dallas*, 704 S.W.2d 737, 739 (Tex. 1986); *Martinez v. City of San Antonio*, 220 S.W.3d 10, 14 (Tex. App.—San Antonio 2006, no pet.).

Waiver of Immunity

The Legislature created a limited waiver of immunity under the TTCA, permitting suits against governmental units for injuries caused in three circumstances: (1) by the operation or use of publicly owned vehicles or equipment; (2) by a condition or use of tangible personal or real property; and (3) by premises defects. Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021(1)(A), (2), 101.022, 101.025(a). A plaintiff must plead sufficient facts to invoke a waiver of immunity under the TTCA. *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

The Texas Recreational Use Statute provides an additional limitation on a city's liability as a premises owner if the plaintiff engaged in recreation on the premises at the time of the injury. Tex. Civ. Prac. & Rem. Code Ann. §§ 75.001-.007 (Recreational Use Statute); *Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 658 (Tex. 2007). The statute provides a nonexclusive list of activities that are considered "recreation[,]" including: hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, cave exploration, water sports, bicycling and mountain biking, disc golf, dog walking, radio control flying, and "any other activity associated with enjoying nature or the outdoors[.]" Tex. Civ. Prac. &

9

Rem. Code Ann. § 75.001(3). When property is open to the public for "recreation," the recreational use statute limits the governmental unit's duty by classifying recreational users as trespassers and limiting liability for premises defects to claims involving gross negligence, malicious intent, or bad faith. *Id.* at § 75.002(c), (d); *Suarez v. City of Texas City*, 465 S.W.3d 623, 632 (Tex. 2015) ("As used in the recreational use statute, the term 'recreation' includes a non-exclusive list of activities[.]"). If a plaintiff engages in "recreation" on city-owned premises, chapter 75 controls over the TTCA and limits the city's duty to that owed a trespasser. Tex. Civ. Prac. & Rem. Code Ann. §§ 75.003(g) (chapter 75 controls over chapter 101 to the extent that chapter 75 limits liability of a governmental unit under circumstances in which the governmental unit would be liable under chapter 101), 101.058 (same), 75.002(c)(2), (f) (duty owed to trespasser). Thus, when applicable, the Recreational Use Statute operates to raise the plaintiff's burden of proof to show gross negligence, malicious intent, or bad faith. *Id.* at § 75.002(d); *Flynn*, 228 S.W.3d at 658, 659-60; *City of Bellmead v. Torres*, 89 S.W.3d 611, 612 (Tex. 2002).

If a claim arises from a premises defect, and the Recreational Use Statute does not apply, the governmental entity owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises.[5] Tex. Civ. Prac. & Rem. Code Ann. § 101.022(a); *City of Irving v.*

---

[5] Here, the parties do not argue Plaintiffs paid for the use of the premises.

*Seppy*, 301 S.W.3d 435, 441 (Tex. App.—Dallas 2009, no pet.). The duty of care owed to a licensee requires the landowner to avoid injuring a licensee by willful, wanton, or grossly negligent conduct, and to use ordinary care either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not. *Seppy*, 301 S.W.3d at 441. To be subject to the duty to warn or make reasonably safe, the governmental entity must have actual knowledge of the dangerous condition. *City of Corsicana v. Stewart*, 249 S.W.3d 412, 413-14, 416 (Tex. 2008) (per curiam); *City of Dallas v. Giraldo*, 262 S.W.3d 864, 869 (Tex. App.—Dallas 2008, no pet.). Constructive knowledge of the defect is insufficient. *Stewart*, 249 S.W.3d at 414-16.

Actual knowledge on the part of a governmental entity requires knowledge that the dangerous condition existed at the time of the accident, as opposed to constructive knowledge that can be established by facts or inferences that a dangerous condition could develop over time. *Id.* at 414-15; *see also Reyes v. City of Laredo*, 335 S.W.3d 605, 608 (Tex. 2010) (per curiam). "Awareness of a potential problem is not actual knowledge of an existing danger." *Reyes*, 335 S.W.3d at 609. When determining whether a premises owner had actual knowledge of a dangerous condition, "courts generally consider whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition." *Univ. of Tex.-Pan Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex. 2008) (per curiam);

11

*see City of Dallas v. Reed*, 258 S.W.3d 620, 623 (Tex. 2008) (per curiam) (finding that no prior accidents or complaints about road condition contributed to conclusion of no actual knowledge at the time of the motorcycle accident).

Actual knowledge of a dangerous condition can sometimes be proven through circumstantial evidence. *See City of Austin v. Leggett*, 257 S.W.3d 456, 476 (Tex. App.—Austin 2008, pet denied). However, "[c]ircumstantial evidence establishes actual knowledge only when it 'either directly or by reasonable inference' supports that conclusion." *Stewart*, 249 S.W.3d at 415 (quoting *State v. Gonzalez*, 82 S.W.3d 322, 330 (Tex. 2002)).

As noted, if the Recreational Use Statute applies, the governmental entity's duty is limited to the duty of care owed to a trespasser. A landowner or premises occupier owes a trespasser only the duty not to injure him willfully, wantonly, or through gross negligence. *Smither v. Tex. Utils. Elec. Co.*, 824 S.W.2d 693, 695 (Tex. App.—El Paso 1992, writ dism'd). "Gross negligence requires that the landowner be subjectively aware of, and consciously indifferent to, an extreme risk of harm." *State v. Shumake*, 199 S.W.3d 279, 288 (Tex. 2006).

<u>Applicability of the Recreational Use Statute</u>

In determining whether the trial court erred in denying the City's plea to the jurisdiction and no-evidence motion for summary judgment, we first determine whether the Recreational Use Statute applies. If it does, under that statute, the

12

Plaintiffs must prove gross negligence, malicious intent, or bad faith. *See Flynn*, 228 S.W.3d at 659 (citing Tex. Civ. Prac. & Rem. Code Ann. § 75.002(d); *Shumake*, 199 S.W.3d at 285-87).

The Recreational Use Statute recognizes that "landowners or occupiers, who open their property to the public for recreational purposes, provide a public benefit." *Id.* at 658. To encourage this use, the statute limits the liability of property owners who give permission to the public to enter the premises for recreation. *Id.*; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 75.002(c); *Shumake*, 199 S.W.3d at 284. The statute "absolves property owners of liability for injuries to others using the property for recreation so long as the property owner does not engage in grossly negligent conduct or act with malicious intent or in bad faith." *Torres*, 89 S.W.3d at 612. The statute states in pertinent part:

> (c) If an owner…gives permission to another to enter the premises for recreation, the owner…by giving the permission, does not:
> (1) assure that the premises are safe for that purpose;
> (2) owe to the person to whom permission is granted a greater degree of care than is owed to a trespasser on the premises; or
> (3) assume responsibility or incur liability for any injury to any individual or property caused by any act of the person to whom permission is granted.

Tex. Civ. Prac. & Rem. Code Ann. § 75.002(c).

In its plea to the jurisdiction and no-evidence motion for summary judgment, as well as on appeal, the City argues the Recreational Use Statute applies "[s]ince this injury [] occurred in a park (concession stand located at Stancil Park) used by

13

the public generally for recreation[.]" Plaintiffs argue that volunteering at a concession stand is not a "recreational activity" similar to the nonexclusive list of activities enumerated in section 75.001(3) of the Texas Civil Practice and Remedies Code.

It is not the landowner's or the injured party's intent for the use of the land but what the injured party was doing at the time she was injured that controls. *Vidrine v. Ctr. for the Performing Arts at The Woodlands*, No. 09-12-00378-CV, 2013 Tex. App. LEXIS 11791, at *8 (Tex. App.—Beaumont Sept. 19, 2013, pet. denied) (mem. op.) (citing *Torres*, 89 S.W.3d at 614); *Sullivan v. City of Fort Worth*, No. 02-10-00223-CV, 2011 Tex. App. LEXIS 3866, at **14-15 (Tex. App.—Fort Worth May 19, 2011, pet. denied) (mem. op. on reh'g). Even if we assume Stancil Park were owned by the City, the fact that Macie was at a City Park when she was injured is not determinative of whether the Recreational Use Statute applies. *See Sullivan*, 2011 Tex. App. LEXIS 3866, at **14-15. (the fact that the wedding reception plaintiff attended was at a city park was not determinative of whether the Recreational Use Statute applied). In *Sullivan*, the court concluded that the statutory definition of recreation is not "so broad as to encompass all activity beyond work…as long as it is conducted outdoors." *Id*. at *16. The court stated that the intent of the statute is to "immunize land owners from suit where the injured party was engaging in activity which bears some risk of danger." *Id*. at *18.

14

Here, it is undisputed that Plaintiffs were working as volunteers in the concession stand at Stancil Park. Their work was in connection with concessions being provided during the Livestock Show activities held at Stancil Park. The question then is whether the Plaintiffs' activity on the premises at the time of injury—working at the concession stand—qualifies as "recreation" under the statute? *See Univ. of Tex. v. Garner*, 595 S.W.3d 645, 650 (Tex. 2019). Working as a volunteer in a concession stand is not one of the activities specifically enumerated in the nonexclusive list contained in the statute, nor do we believe that working at a concession stand generally falls within the type of activity considered to be "recreation." We conclude that the Plaintiffs were not engaging in recreation at the time of the accident, and thus the Recreational Use Statute does not apply.

<u>Review of City's Plea to the Jurisdiction</u>

The City argues the trial court erred in denying its plea to the jurisdiction. A plea to the jurisdiction is a dilatory plea; its purpose is "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's jurisdiction over the subject matter of a pleaded cause of action. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Subject matter jurisdiction is a question of law. As a result, an appellate court conducts a de novo review of a trial court's ruling on a plea to the jurisdiction. *Id*. A defendant may use a plea to the

15

jurisdiction to challenge whether the plaintiff has met her burden of alleging jurisdictional facts or to challenge the existence of jurisdictional facts. *See id.* at 226-27.

Under the Texas Tort Claims Act, the duty a governmental unit owes for a premises defect is that owed to a licensee. Tex. Civ. Prac. & Rem. Code §101.022(a) ("[I]f a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises."). Rather than expressly imposing a particular duty, as the Legislature did in section 101.022(b) with the "duty to warn" in special defect cases, the Legislature linked the applicable duty under section 101.022(a)—for premises defects—to the common law. *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 387 (Tex. 2016). "'That duty requires that a landowner not injure a licensee by willful, wanton or grossly negligent conduct, and that the owner use ordinary care either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not.'" *Id.* (quoting *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992)).

Plaintiffs allege that the City's knowledge of the premises defect provides evidence of gross negligence given its failure to warn Plaintiffs or repair the dangerous electrical outlet. Absent willful, wanton or grossly negligent conduct, a

16

plaintiff must prove the following to establish the breach of the duty owed to that plaintiff: (1) a condition of the premises created an unreasonable risk of harm to the plaintiff; (2) the governmental unit actually knew of the condition; (3) the plaintiff did not actually know of the condition; (4) the governmental unit failed to exercise ordinary care to protect the plaintiff from danger; and (5) the governmental unit's failure was a proximate cause of the injury to the plaintiff. *Id.* at 391. If the governmental unit can show that there is no evidence of one of these elements, its plea to the jurisdiction must be granted. *Id.*

In its plea to the jurisdiction, the City did not challenge the sufficiency of Plaintiffs' pleadings but instead challenged the existence of jurisdictional facts. When a plea to the jurisdiction challenges the existence of jurisdictional facts, we must consider relevant evidence submitted by the parties to resolve the jurisdictional issues. *Miranda*, 133 S.W.3d at 227. In reviewing such a plea, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771 (Tex. 2018); *Miranda*, 133 S.W.3d at 228. However, we cannot disregard evidence necessary to show context or evidence and inferences unfavorable to the nonmovant if reasonable jurors could not do so. *See Alamo Heights*, 544 S.W.3d at 771.

This standard mirrors our summary-judgment standard under Texas Rule of Procedure 166a(c) and places the burden on the governmental unit, as the movant, to meet the standard of proof to support its contention that the trial court lacks subject-matter jurisdiction. *Miranda*, 133 S.W.3d at 228; *see also Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). Once the governmental unit asserts and provides evidentiary support for its plea, the plaintiff is then required to show that a disputed fact issue exists on the jurisdictional issue. *Miranda*, 133 S.W.3d at 228. If the evidence creates a genuine issue of a material fact question on the jurisdictional issue, the trial court cannot grant the plea, and the fact issue is for the fact finder to resolve. *See Alamo Heights*, 544 S.W.3d at 771; *Miranda*, 133 S.W.3d at 227-28. If the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 228.

Unlike the no-evidence summary judgment procedure described in section 166a(i) of the Texas Rules of Civil Procedure, under this procedure, a defendant "cannot simply deny the existence of jurisdictional facts and force the plaintiff to raise a fact issue." *HSBC Bank USA, N.A. v. Watson*, 377 S.W.3d 766, 773 (Tex. App—Dallas 2012, pet. dism'd) (quoting *Cty. of Dallas v. Walker*, No. 05-10-01421-CV, 2011 Tex. App. LEXIS 4143, at *3 (Tex. App.—Dallas May 31, 2011, no pet.) (mem. op.)). To invoke this burden-shifting procedure, the defendant bears

the initial burden to show "through its plea to the jurisdiction and attached evidence that it did not owe a duty as a matter of law and therefore the [plaintiff's] claims are barred by sovereign immunity." *Tirado v. City of El Paso*, 361 S.W.3d 191, 196 (Tex. App.—El Paso 2012, no pet.) (citing *Robnett v. City of Big Spring*, 26 S.W.3d 535, 538 (Tex. App.—Eastland 2000, no pet.)). So, while a plaintiff has the initial burden to plead the elements of her cause of action and allege the basic facts that make up her claim, a plaintiff "will only be required to submit evidence if the defendant presents evidence negating one of those basic facts." *Mission Consol. Indep. Sch. Dist.*, 372 S.W.3d at 637 (citing *Miranda*, 133 S.W.3d at 228).

When a plea to the jurisdiction challenges the existence of jurisdictional facts and those facts implicate the merits of a plaintiff's claim, as in this case, the party asserting the plea must overcome a burden much like the movant's burden on a traditional-summary-judgment motion. *See Bacon v. Tex. Historical Comm'n*, 411 S.W.3d 161, 171 (Tex. App.—Austin 2013, no pet.). To meet this burden, the City had the burden to present evidence in support of its assertion, which then would shift the burden to the plaintiffs to show that a disputed material fact exists regarding the jurisdictional issue. *Miranda*, 133 S.W.3d at 228. When there is a fact question about jurisdiction, the plea cannot be granted, and the fact question will be resolved by the factfinder. *See id.* at 227-28. But if the relevant evidence is undisputed or does not raise a fact question on jurisdiction, we rule on the plea as a matter of law. *See id.* at

19

228. Here, the City failed to present any evidence to negate jurisdiction and it does not contend that the relevant evidence is undisputed. That said, the burden never shifted back to the Plaintiffs to raise a fact question on the jurisdictional issue. *See id.* at 228; *see also Mission Consol. Indep. Sch. Dist.*, 372 S.W.3d at 637; *Dallas Cty. v. Wadley*, 168 S.W.3d 373, 379 (Tex. App.—Dallas 2005, pet. denied). Accordingly, we find that the trial court's denial of the City's plea to the jurisdiction was proper.

Denial of the City's No-Evidence Motion for Summary Judgment

In its appellate issue, the City also argues the trial court erred in denying its no-evidence summary judgment. When a no-evidence motion for summary judgment is filed, the nonmovant must respond by producing summary judgment evidence that raises a genuine issue of material fact on each challenged element of a claim or defense. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600-01 (Tex. 2004). In response to the government's challenge to the trial court's jurisdiction in a no-evidence motion for summary judgment, the plaintiff must produce evidence affirmatively demonstrating the trial court's subject-matter jurisdiction. *See generally Miranda*, 133 S.W.3d at 228-29; *State Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 586-87 (Tex. 2001). The nonmovant need not "marshal" its evidence or prove up its case to defeat a no-evidence motion. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 551-52 (Tex. 2019). Under Rule 166a(i), the nonmovant

20

is required only to produce enough evidence—that is, more than a scintilla—to create a genuine issue of material fact as to the challenged element. *Ridgway*, 135 S.W.3d at 600.

In its motion for summary judgment and on appeal, the City argues there is no evidence it controlled the concession stand at the time of the incident, and even if it did, there is no evidence that under section 101.022 of the Civil Practice and Remedies Code that Plaintiffs as licensees were injured as the result of gross negligence or willful or wanton conduct by the City involving a defect in the electrical system of the concession stand, or that the City possessed actual knowledge of the electrical shock risk and failed to make the risk reasonably safe or warn Plaintiffs about its existence, or that a defect in Macie's phone charger and not the outlet's electrical wiring caused the short and shock.

The Plaintiffs attached several exhibits to their Response, including two affidavits, one from Greg Henderson and the other from Glen Barnhill.[6] The City

---

[6] Greg Henderson, a licensed electrician in Texas for at least fifteen years, who owned his own electrical business since 2010, and who had been employed in the electrical field for thirty-eight years, stated in his affidavit:

> On April 11, 2016 I was called by the City of Cleveland to inspect the electrical system at the concession stand at Stancil Park. I met City of Cleveland employee, Robert Meadows, at the concession stand and was informed by Mr. Meadows that a plug had shorted out [that] weekend.
>
> An inspection of the electrical system revealed:
> 1. The panel was an older Federal Pacific panel.

21

lodged objections to these affidavits, so we address the City's objections to these affidavits first. As to Henderson's affidavit, the City objected stating the affidavit was conclusory because "any electrical causation conclusion within the Henderson affidavit is not supported by factual evidence." According to the City, because there is no evidence that the cell phone charger generated a 30-amp load across the 20-amp wire, "it is speculative to link the short in the plug to the 20-amp wire attached to the 30-amp breaker." As we read Henderson's affidavit, he lists what his

---

2. The panel was not properly bonding.
3. The breaker is [a] 30 amp. with 20 amp. wire hooked up to it.
4. The plug appears that it shorted out.

I recommend that the City replace the panel and properly bond it and pull all wire through a conduit and replace breakers and plugs.

Glen Barnhill formerly worked for the City of Cleveland and stated in his affidavit:

My name is Glen Barnhill. I am over 18 years of age, of sound mind, and capable of making this affidavit. The facts stated in this Affidavit are within my personal knowledge and are true and correct.

I am the former Building Official for the City of Cleveland. The City of Cleveland, specifically including the City Manager Kelly McDonald, was made aware at Department head meetings of reports of an electrical problem at the concession stand at Stancil Park prior to Macie Martin LaFrance being electrocuted. I personally attended the Department head meetings and heard the electrical problems being discussed in the presence of Ms. McDonald prior to Macie Martin LaFrance being injured. The electrical problems [were] at the concession stand where Macie Martin was electrocuted.

22

inspection revealed and what recommendations he made to the City. As such, we cannot say the trial court abused its discretion in overruling the objections.

Next, the City argued that Barnhill's affidavit was conclusory and not based on personal knowledge. According to the City,

> Barnhill does not personally know whether the purported electrical problems resulted in the electrical shock event made the basis of this suit; does not know whether the unidentified author of such statement possessed personal knowledge about the purported electrical problem; does not know whether such author actually knew that the purported electrical problems would result in the shorting of an electrical plug when [Macie] LaFrance plugged a cell phone charger into it; and does not know whether the electrical short even was caused by the cell phone charger or the electrical plug.

As this Court reads Barnhill's affidavit, Barnhill stated in his affidavit that he was the former Building Official for the City and attended Department head meetings where, prior to Macie's electrocution, the electrical problems at the concession stand where Macie was injured were discussed in the City Manager's presence. While it is true, he does not state who made such statements during the meeting or exactly what may have been stated, we cannot say the trial court abused its discretion in overruling the objections and in concluding that Barnhill's affidavit was based on personal knowledge and was not conclusory.

In addition to those two affidavits, Plaintiffs attached a City of Cleveland Incident Report from April 11, 2016 for the Stancil Park Concession Stand wherein Robert Meadows commented as follows:

23

Was called . . . about a[n] accident that happen[ed] over the weekend @ the concession stand. A person was electrocuted. Found a burned up plug on the north side of building. Took pictures of plug & attach to incident report. Called Greg with Henderson [E]lectric. He check[ed] into it & inspected plug. He gave me his professional opinion. Also gave me a lot of thing[s] that he found & also what he recommend[ed] we do to repair problem.

Attached to the City of Cleveland Incident Report were copies of photographs of the outlet and a copy of a document with "Henderson Electric" handwritten at the top and with the following handwritten notes:

Problem Found:
        Panel is a federal pacific – out of date
        Panel is not properly bonding
        The breaker is 30 Amp with 20 Amp wired hooked up to it.
        The plug looks like it shorted out []
Solution    -    Change Panel & properly bond it
           -    Pull all wire through conduit & replace breakers and plugs

An affidavit of Penny Martin was also attached as an exhibit to Plaintiffs' response and Penny stated the following:

We were volunteering in the concession stand and my daughter, Plaintiff Macie Martin LaFrance, and I were looking for an electrical plug to plug up a cell phone charger. Macie bent over and plugged in a cell phone charger under the front counter of the concession stand. She was thrown backwards. I dragged her to the left side of the concession stand. She was in and out of consciousness, shaking, and having difficulty breathing, and she was in a lot of pain. Neither I nor Macie had any prior knowledge of any electrical problems in the concession stand.

Attached as other exhibits to Plaintiffs' Response were portions of a transcript of the deposition of Kelly McDonald, City Manager for the City of Cleveland,

24

wherein she testified that the Incident Report was part of the official records from the City made in the regular course of business at or near the time of the event and it reflected information of which people had personal knowledge, she never heard that the Livestock Show had knowledge of an electrical problem at the concession stand prior to Macie being electrocuted, and that the City owned the Stancil Park real estate but did not own the concession stand and she had not confirmed who owned the concession stand.

Additional excerpts from deposition testimony of Jennifer Lewis, the Livestock Show President since 2014, were also attached to the Plaintiffs' Response. Lewis testified that she had not heard about an electrical problem at the concession stand prior to Macie being electrocuted, on March 31, 2016 she had asked the City to repair a window and water pipe in the concession stand, but that the City refused to make the repairs because it contended the Livestock Show owned the concession stand. Lewis testified that she believed the City owned the concession stand and was responsible for maintaining it, and that the Livestock Show was not responsible for maintaining the concession stand generally or the electrical system specifically. Plaintiffs also attached as an exhibit a March 31, 2016 email from Lewis to Frieda Joyce asking for the City to provide paperwork establishing that the Livestock Show owned the concession stand because of her understanding that the City owned the concession stand.

25

Examining the entire record in the light most favorable to Plaintiffs, indulging every reasonable inference in Plaintiffs' favor, and resolving any doubts against the City as the movant on the no-evidence motion for summary judgment, we conclude that Plaintiffs produced more than a scintilla of probative evidence raising a genuine issue of material fact regarding the challenged elements of their claims. Therefore, we overrule the City's appellate issue and affirm the trial court's denial of the City's no-evidence motion for summary judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on September 9, 2021
Opinion Delivered June 9, 2022

Before Kreger, Horton and Johnson, JJ.